**TEXAS DEPARTMENT OF HUMAN SERVICES, Appellant,**

v.

**Oliver OKOLI, Appellee.**

**No. 01–07–00103–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 17, 2010.

Russ Wayne Harris, Office of the Attorney General, General Litigation Division, Austin, TX, for Appellant.

Okon J. Usoro, Okon J. Usoro, P.C., Houston, TX, Oliver Okoli, Alief, TX, for Appellee.

Panel consists of Justices JENNINGS, ALCALA, and HANKS.

## OPINION

TERRY JENNINGS, Justice.

In this interlocutory appeal,[1] appellant, the Texas Department of Human Services ("TDHS"), challenges the trial court's order denying its plea to jurisdiction filed in the underlying Texas Whistleblower Act[2] lawsuit brought against it by appellee, Oliver E. Okoli. In three issues, TDHS contends that Okoli did not, as required by the Whistleblower Act, report a violation of law to an appropriate law enforcement authority or present sufficient evidence to invoke the limited waiver of sovereign immunity provided by the Whistleblower Act and his fraud and malice claims are barred by sovereign immunity.

On June 28, 2007, this Court issued an opinion in which we held that the Whistleblower Act "makes the only jurisdictional prerequisites to maintaining a whistleblower suit the plaintiff's status as a public employee and the sufficiency of his whistleblower allegations" and "whether Okoli actually reported to an appropriate law enforcement authority, or whether he had a good-faith belief that TDHS was such an authority, is an element of his whistleblower claim and cannot be a jurisdictional prerequisite to suit." *Tex. Dep't of Human Servs. v. Okoli,* 263 S.W.3d 275, 282 (Tex.App.-Houston [1st Dist.] 2007), *rev'd,* 295 S.W.3d 667 (Tex.2009). Because we

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon 2008).

2. *See* TEX. GOV'T CODE ANN. §§ 554.001–.010 (Vernon 2004).

concluded that TDHS, in its jurisdictional plea, asserted and presented evidence on only these non-jurisdictional elements of Okoli's whistleblower claim, we overruled TDHS's issues in which it challenged the trial court's order denying its plea to the jurisdiction.[3] *Id.*

The Texas Supreme Court, on August 28, 2009, issued its opinion in *State v. Lueck*, in which it held that the elements of a whistleblower claim "can be considered to determine both jurisdiction and liability." 290 S.W.3d 876, 883 (Tex.2009) (citing TEX. GOV'T CODE ANN. § 554.002(a) (Vernon 2004)). On the same day, the supreme court, in a per curiam opinion, reversed this Court's opinion in *Okoli*, explaining that, under *Lueck*, whether Okoli made "a good faith report of a violation of law to an appropriate law enforcement authority is a jurisdictional question." *Tex. Dep't of Health and Human Servs. v. Okoli*, 295 S.W.3d 667, 668 (Tex.2009). The supreme court, "for the reasons explained in *Lueck*," remanded the *Okoli* case to this Court "to determine whether Okoli has alleged a violation under the Act." *Id.* (citing TEX. GOV'T CODE ANN. § 554.002(a) (Vernon 2004)).

We affirm the order of the trial court.

## Background

As summarized in our original opinion,[4] Okoli, in his petition, alleges that TDHS hired him as a caseworker trainee and ultimately promoted him to a "Worker II" position, whose job functions included determining the eligibility of TDHS clients for its social programs. According to Okoli, Brendell Carroll, his TDHS supervisor,

engaged in fraudulent conduct in processing benefits including, among other things, "falsifying dates and documents to avoid delinquencies in the handling of clients' cases." Okoli first complained about the date-falsification activity to Carroll, who retaliated against him with certain workplace measures. Okoli then reported the date-falsification activity to Carroll's supervisor, John Robinson, and then to Robinson's manager, Carol Maxie. Shortly after his report to Maxie, TDHS terminated Okoli's employment. Okoli then pursued an administrative grievance procedure to contest his termination, but the termination decision was sustained. Okoli further alleges that when he "reported the unlawful practices in the unit" to Robinson, TDHS terminated his employment, ostensibly "for violating TDHS work rules." Okoli asserts a claim against TDHS for violations of the Whistleblower Act as well as "cause[s] of action" for fraud and malice.

In its jurisdictional plea, TDHS argued that the trial court lacked subject-matter jurisdiction over Okoli's whistleblower claim because TDHS and "administrators at [TDHS] were not the proper law enforcement authorities for reports of 'Unlawful Use of Funds'" and Okoli did not have a good-faith belief that TDHS and his TDHS supervisors were such authorities. TDHS also argued that the trial court lacked subject-matter jurisdiction over Okoli's claims for fraud and malice because the Texas Tort Claims Act ("TTCA") does not waive immunity from suit for inten-

---

**3.** We also held that because Okoli's malice and fraud allegations "were not causes of action, but were instead merely allegations supporting damages," they did not implicate subject-matter jurisdiction and were not a proper subject of a plea to the jurisdiction. *Tex. Dep't of Human Servs. v. Okoli*, 263

S.W.3d 275, 282 (Tex.App.-Houston [1st Dist.] 2007), *rev'd*, 295 S.W.3d 667 (Tex.2009). Thus, we overruled TDHS's third issue.

**4.** *See Tex. Dep't of Human Servs. v. Okoli*, 263 S.W.3d at 276–77.

tional wrongs like these.[5]

In his response, Okoli asserted that Carroll and other TDHS employees violated section 12.002 of the Texas Human Resources Code, entitled "Unlawful Use of Funds."[6] Okoli argued that his report to TDHS was to an appropriate law enforcement authority because TDHS is the governmental entity authorized to regulate under and enforce the subject law. Okoli also argued that he, in good faith, believed that TDHS and his supervisors were authorized to regulate under and enforce section 12.002 because his work rules required employees to make reports of fraudulent conduct to their supervisors. He noted that TDHS is authorized to "refer and fund district attorney's special welfare fraud units for prosecution."[7] Okoli also noted that TDHS admitted that "TDHS, through its Office of Investigation ('OIG'), investigates the law" that he reported had been violated.

The trial court denied TDHS's jurisdictional plea.

## Standard of Review

We review de novo a trial court's ruling on a jurisdictional plea. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 855 (Tex.2002). When reviewing a trial court's ruling on a plea, "we first look to the pleadings to determine if jurisdiction is proper, construing them liberally in favor of the plaintiffs and looking to the pleader's intent," and "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdiction-

al issues raised." *City of Waco v. Kirwan,* 298 S.W.3d 618, 621–22 (Tex.2009); *see also Tex. Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 868 (Tex. 2001) ("[W]e consider the facts alleged by the plaintiff[s] and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties."). In considering this evidence, we "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Kirwan,* 298 S.W.3d at 622.

■■ Immunity from suit is properly asserted in a plea to the jurisdiction.[8] *Lueck,* 290 S.W.3d at 880. The State and its agencies like TDHS are immune from suit and liability in Texas unless the Legislature expressly waives sovereign immunity. *Id.; see also* Tex. Gov't Code Ann. § 311.034 (Vernon Supp.2009) ("[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."). A statute waives immunity from suit, immunity from liability, or both. *Lueck,* 290 S.W.3d at 880. Immunity from suit presents "a jurisdictional question of whether the State has expressly consented to suit," whereas immunity from liability concerns "whether the State has accepted liability even after it has consented to suit." *Id.* In statutes in which immunity from suit is waived to the extent of liability, "immunity from suit and liability are co-extensive." *Id.* (citing Tex. Civ. Prac. & Rem.Code Ann. § 101.025(a) (Vernon 2005)).

■■ When a party in a plea to the jurisdiction challenges the pleadings, we determine if the pleadings contain facts

---

**5.** *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.025, 101.057 (Vernon 2005).

**6.** Tex Hum. Res.Code Ann. § 12.002 (Vernon Supp.2009).

**7.** *See id.* § 22.0254 (Vernon 2001).

**8.** Immunity from liability is an affirmative defense that cannot be raised by a plea to the jurisdiction. *Lueck,* 290 S.W.3d at 880.

that "affirmatively demonstrate" the trial court's jurisdiction to hear the case. *Id.* at 884. When the facts underlying the merits and subject-matter jurisdiction are intertwined, "the State may assert immunity from suit by a plea to the jurisdiction, even when the trial court must consider evidence 'necessary to resolve the jurisdictional issues raised.'" *Id.* at 880 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000)).

### The Whistleblower Act

In its first two issues, TDHS argues that the trial court erred in denying its plea to the jurisdiction because Okoli's "supervisors are not appropriate law enforcement authorities" and Okoli has "not brought forth sufficient evidence to invoke the limited waiver of sovereign immunity provided in the Whistleblower Act." [9] TDHS asserts that it does not regulate or enforce violations of criminal law and Okoli did not have a good faith belief that TDHS supervisors are appropriate law enforcement authorities. TDHS further asserts that "[a]lerting an employer to the employer's own conduct is insufficient as a matter of law to meet the [Whistleblower] Act's 'law enforcement' requirement," and, as a result, Okoli's "supervisors and other TDHS administrators, who were allegedly involved in the illegal acts, were not appropriate law enforcement authorities for purposes of their conduct."

The immunity provision in the Whistleblower Act [10] provides:

> A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

TEX. GOV'T CODE ANN. § 554.0035 (Vernon 2004). Section 554.0035 prescribes two requirements to waive a governmental entity's immunity and vest a court with jurisdiction: (1) the plaintiff must be a public employee and (2) he must allege a "violation of this chapter." *Lueck*, 290 S.W.3d at 881. The standard for a "violation of this chapter" is found in section 554.002 of the Whistleblower Act. *Id.* Thus, the elements of section 554.002 are "necessarily" considered as jurisdictional facts "in order to ascertain what constitutes a violation, and whether that violation has actually been alleged." [11] *Id.*

Section 554.002 provides,

---

9. TDHS did not challenge in its plea, and does not challenge on appeal, that Okoli reported a violation of law.

10. We note that the Whistleblower Act is designed to enhance openness in government and to compel the government's compliance with law by protecting those who inform authorities of wrongdoing. *City of Houston v. Levingston*, 221 S.W.3d 204, 218 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (citing *Davis v. Ector County*, 40 F.3d 777, 785 (5th Cir.1994)). The Whistleblower Act evidences two legislative purposes: (1) to protect public employees from retaliation by their employer when, in good faith, they report a violation of the law and (2) in consequence, to secure lawful conduct on the part of those who di-

rect and conduct the affairs of public bodies. *Id.; see also Turner v. Perry*, 278 S.W.3d 806, 821 (Tex.App.-Houston [14th Dist.] 2009, pet. denied). Because the Act is remedial in nature, we construe its provisions liberally. *Levingston*, 221 S.W.3d at 218; *Tex. Dep't of Criminal Justice v. McElyea*, 239 S.W.3d 842, 849 (Tex.App.-Austin 2007, pet. denied).

11. In *Lueck*, the Texas Supreme Court stated that "that the elements of section 554.002(a) can be considered to determine both jurisdiction and liability." *Lueck*, 290 S.W.3d at 883. Because section 554.002(b) defines terms used in section 554.002(a), we necessarily consider subpart (b) of section 554.002 in the jurisdictional analysis.

(a) A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

(b) In this section, a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to:

(1) regulate under or enforce the law alleged to be violated in the report; or

(2) investigate or prosecute a violation of criminal law.

Tex. Gov't Code Ann. § 554.002 (Vernon 2004).

 Under section 554.002(a), "good faith" means "that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience." *Wichita County v. Hart*, 917 S.W.2d 779, 784 (Tex.1996). The test's first element is subjective and ensures that a Whistleblower claimant believed that he was reporting an actual violation of the law, while the test's second element is objective and ensures that the claimant received the Act's protection only if a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of the law. *Id.* at 784–85; *City of*

*Houston v. Levingston*, 221 S.W.3d 204, 218–219 (Tex.App.-Houston [1st Dist.] 2006, no pet.). Similarly, under section 554.002(b), "good faith" means that (1) the employee subjectively believed the governmental entity was authorized to regulate under or enforce the law alleged to be violated in the report, or investigate or prosecute a violation of criminal law; and (2) the employee's belief was objectively reasonable in light of the employee's training and experience. *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320–21 (Tex. 2002); *Levingston*, 221 S.W.3d at 218.

Here, TDHS argues that Okoli's report to his supervisors did not constitute a report of a violation of law to a law enforcement authority because TDHS's responsibilities do not include the regulation, enforcement, investigation, or prosecution of reports of unlawful conduct like that alleged by Okoli; its "general duties" are limited to administering assistance to those in need of its programs. TDHS further argues that an employee with Okoli's training and experience could not have a good faith belief that TDHS had the authority to regulate, enforce, or prosecute a violation of criminal law for "misuse of funds" because he would know that these powers belong "to any number of prosecutorial agencies such as the Attorney General's Office, District Attorney's Office, the Department of Justice, *or at the very least TDHS's Office of the Inspector General.*" (emphasis added). TDHS concedes that the OIG at TDHS was "charged with the responsibility to investigate waste, abuse, and fraud in all health and human services systems." [12] It argues, however,

---

12. We note that, as described on the website for the Texas Health and Human Services Commission, the OIG "works to prevent and reduce waste, abuse and fraud within the Texas health and human services system" and the OIG "works closely with all health and human services agencies and programs, and coordinates with local, state and federal law enforcement agencies to uphold the highest standards of integrity and accountability." Health and Human Services Commission's Office of Inspector General, https://oig.hhsc.

that because Okoli characterized the reported conduct of his supervisors as "criminal," and "criminal violations of the law [that] could result in penitentiary time, [Okoli] should have ... reported [the conduct] to the previously mentioned agencies, not simply to three persons in his chain of command at TDHS." In support of its argument that Okoli could not have had a good faith belief that the TDHS administrators were appropriate law enforcement authorities, TDHS notes that Okoli previously signed a TDHS memorandum regarding work rule violations that stated that when such violations also constituted a violation of the penal code,[13] "a referral to OIG [would] be made for possible prosecution." Citing *Needham*, TDHS contends that the Texas Supreme Court has "rejected the notion that a report to one's superiors is sufficient" to obtain the protection of the Whistleblower Act. 82 S.W.3d at 320–21.

In response, Okoli asserts that TDHS is the governmental entity authorized to regulate, enforce, investigate, or prosecute "welfare fraud," and, in determining if he made a report to an appropriate law enforcement authority, we should focus on the governmental entity, i.e., TDHS, not the individual supervisors to whom he

made his report. Okoli emphasizes that he reported an unlawful use of funds, which violates section 12.002 of the Texas Human Resources Code and which provides,

(a) A person charged with the duty or responsibility of administering, disbursing, auditing, or otherwise handling the grants, funds, or money provided for in this title commits an offense if the person misappropriates the grants, funds, or money or by deception or fraud wrongfully distributes the grants, funds, or money to any person.

(b) An offense under this section is a felony punishable by confinement in the Texas Department of Criminal Justice for a term of not less than two or more than seven years.

TEX. HUM. RES.CODE ANN. § 12.002 (Vernon Supp.2009).

In affidavits submitted to the trial court, Okoli testified that Carroll, his supervisor, among other acts, falsified the dates on applications for benefits. Okoli had previously been instructed that changing file dates on these applications constituted criminal conduct, he was to report all unlawful acts to his supervisor for further action, and he was "then [to] go up the

---

state.tx.us/ (last visited June 14, 2010). The website provides that "[a]ny state employee or public citizen may report waste, abuse or fraud" by using an online reporting form or calling the OIG's toll free telephone number. *Id.*

The website also sets forth the OIG's mission statement as follows:

We protect the integrity and ensure accountability in the health and human services programs, as well as the health and welfare of the recipients of those programs, by identifying, communicating and correcting activities of waste, fraud or abuse in Texas.

In performing its mission, the office is required to set clear objectives, priorities,

and performance standards, including: Coordinating investigative efforts to aggressively recover Medicaid overpayments; Allocating resources to cases that have the strongest supportive evidence and the greatest potential for recovery of money; [and] Maximizing the opportunities for referral of cases to the Office of the Attorney General.

*Id.*

13. This internal memorandum specifically refers to section 37.10 of the Texas Penal Code, which criminalizes tampering with a government record. *See* TEX. PENAL CODE ANN. § 37.10 (Vernon Supp.2009)

chain of command" if he was dissatisfied with his supervisor's response. Okoli denied that he had received training to follow any other whistleblowing procedures. Okoli also noted that he had been instructed to follow this protocol in prior, unrelated instances of reporting unlawful conduct or misconduct at TDHS. Okoli, based upon his training, after learning of the alleged unlawful conduct, first reported the unlawful conduct to Carroll, then to Robinson, and then to Maxie.[14] He explained that, but for the termination of his employment, he "would have continued" with his reports "up the chain of command." Okoli averred that he reasonably believed that TDHS was authorized to regulate, enforce, investigate, or prosecute "the culprits" under section 12.002 of the Human Resources Code.

The record before us contains evidence that TDHS, or at least a division of TDHS, the OIG, is an appropriate law enforcement authority[15] that is authorized to investigate allegations of fraud and "unlawful use of funds" associated with the social programs administered by employees of TDHS.[16] TDHS even concedes this fact in its briefing when it argues that Okoli would have known "that the power to regulate, enforce, investigate, and prosecute penal laws" belonged to any number of prosecutorial agencies and, "*at the very least TDHS's Office of the Inspector General.*"[17] (emphasis added). The record before us contains evidence that, in making his alleged reports of criminal conduct to his immediate supervisor, and the two higher supervisors in his chain of command, Okoli believed that he was making reports to persons capable of investigating the alleged criminal conduct. Okoli testified to these critical facts by affidavit, and, under the applicable standard of review, we must accept his testimony at this stage as true. *See City of El Paso v. Heinrich,* 284 S.W.3d 366, 378 (Tex.2009) (noting that standard of review applicable to plea to jurisdiction mirrors standard of review of summary judgments and stating that court must take as true all evidence favorable to claimant, "indulging every reasonable inference and resolving any doubts in [his] favor"). The record contains evidence that Okoli was instructed by TDHS to report the criminal conduct at issue in this case "up his chain of command," starting with his immediate supervisor, and, according to Okoli's testimony, he followed the required procedures in reporting the alleged criminal conduct. With Okoli's pleadings

---

14. Okoli also testified that Carroll was directly involved in the unlawful conduct and that he believed Robinson was involved in some sort of "cover up" activity.

15. We also note that TDHS, in its mission statement, states that it coordinates with law enforcement authorities in regard to reports of fraud, waste, or abuse, and it encourages TDHS employees and citizens to make reports of waste, abuse or fraud directly to the OIG at TDHS. Health and Human Services Commission's Office of Inspector General, https://oig.hhsc.state.tx.us/ (last visited June 14, 2010).

16. As noted above, TDHS did not challenge that Okoli, in good faith, reported "a violation of law." Thus, we do not comment on whether Okoli's allegations actually support his claim that TDHS employees committed criminal conduct under the cited statute. Rather, TDHS's plea and appellate arguments focus on whether Okoli's supervisors to whom he made the report can be considered appropriate law enforcement authorities.

17. Okoli also cites numerous other provisions of the Texas Human Resources Code that he contends make clear that TDHS is authorized to regulate under or enforce the law alleged to be violated in the report or to investigate or prosecute a *violation of criminal law*. *See* TEX. HUM. RES.CODE ANN. § 22.0254 ("Prosecution of Fraudulent Claims"); § 22.027("Fraud Prevention"); § 22.029 ("Project for Fraud Detection and Prevention Through Data Matching")(Vernon 2001).

and the evidence as summarized above in mind, we consider whether the three TDHS supervisors to whom Okoli made the reports can themselves be considered appropriate law enforcement authorities under section 554.002 and, alternatively, whether Okoli could have, in good faith, concluded that these supervisors were appropriate law enforcement authorities to which to report such conduct.

The Texas Supreme Court's opinion in *Lueck* provides guidance on this question. In *Lueck*, the supreme court held that a Texas Department of Transportation ("TxDOT") employee was not entitled to the protection of the Whistleblower Act because the employee's report, which was contained in an e-mail to his supervisor, concerned violations of regulations or internal policy recommendations—not actual violations of the law and not the kind of reports "that the Whistleblower Act was designed to protect." 290 S.W.3d at 885. The court further noted that, even if the employee had reported a violation of the law, the employee had not made a report to an appropriate law enforcement authority. *Id.* at 885–86. An examination of the pleadings and the attached e-mail revealed that the e-mail demonstrated that the supervisor, who was the head of a division within TxDOT, was not an appropriate law enforcement authority because he "could neither regulate nor enforce the law that [the plaintiff] alleged had been violated." *Id.* The e-mail indicated that the plaintiff employee knew that the supervisor "was not the proper authority *within TxDOT* to

regulate the reported violations" because the employee recommended in the e-mail that his supervisor have the report available when discussing the matters "with other TxDOT divisions." *Id.* at 886 (emphasis added). Thus, the e-mail "conclusively establish[ed]" that the employee "could not have formed a good-faith belief" that his supervisor "was authorized to enforce such violations." *Id.*

Under *Lueck*, as well as precedent from this Court, we should consider not simply whether TDHS itself could be characterized an appropriate law enforcement authority, but rather whether the supervisors themselves (to whom the reports were made) were the appropriate law enforcement authorities to investigate the alleged criminal matters that were the subject of Okoli's complaints.[18] *Id.; see also Levingston*, 221 S.W.3d at 218–219, 224 (noting that division manager of governmental entity to whom report was made had power to investigate reported violations of Texas Penal Code as well as legal duty to file charges and provide evidence; stating that, based upon manager's "supervisory position," manager "was certainly in the best position to receive such reports on behalf" of governmental entity).

Accepting as true Okoli's testimony that he was required by TDHS policy to report the subject criminal matters "up the chain of command,"[19] we hold that the supervisors were appropriate law enforcement authorities within TDHS and, alternatively, that Okoli had a good faith belief that he

18. Of course, we must consider whether the governmental entity itself, which employs the individuals to whom the reports were made, could be considered an appropriate law enforcement authority authorized to regulate under or enforce the law alleged to be violated or investigate or prosecute a violation of criminal law. *See* Tex. Gov't Code Ann. § 554.002 (Vernon 2004).

19. Construing any doubts in his favor, we must read Okoli's testimony to mean that he had been instructed by TDHS to report such matters up his chain of command rather than to the OIG at TDHS directly. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009) (stating that we must indulge every reasonable inference and resolve any doubts in favor of party resisting plea to jurisdiction).

was reporting the alleged criminal conduct to appropriate law enforcement authorities. If TDHS compelled Okoli to bring such criminal matters to the attention of three supervisors within his chain of command, as testified to by Okoli, and if TDHS policy contemplates referral of criminal matters to the OIG at TDHS for investigative purposes, which is undisputed, Okoli, under the plain language of the Whistleblower Act, is entitled to the Act's protection for whistleblowing about the alleged unlawful conduct to those in his chain of command.

TDHS's reliance upon *Needham* is misplaced. In *Needham*, a plaintiff TxDOT employee reported to his TxDOT supervisor a co-worker's suspected driving while intoxicated incident. 82 S.W.3d at 319. The court noted that "the particular law the public employee reported violated is critical to the determination" of whether the governmental entity could be an appropriate law enforcement authority. *Id.* at 320. The court concluded that TxDOT was not an appropriate law enforcement authority because it had "no authority to regulate under or enforce" the "driving while intoxicated laws" or "to investigate or prosecute these criminal laws." *Id.* The court noted that, "[a]t most," TxDOT had authority to "regulate and investigate" employee conduct for internal disciplinary reasons, which was not enough to provide the reporting employee protection under the Whistleblower Act. *Id.*

Here, in stark contrast, Okoli has not made a report of criminal conduct that was outside the scope of the investigative powers of TDHS. Rather, Okoli alleges that TDHS employees, in processing benefits administered by TDHS, unlawfully used funds in violation of section 12.002 of the Texas Human Resources Code. If Okoli, like the plaintiff in *Needham*, had alleged that a co-worker had engaged in criminal conduct unrelated to TDHS's mission and beyond the investigative powers of TDHS, *Needham* would compel the dismissal of his Whistleblower suit.

However, Okoli's claims are more akin to those considered by this Court in *Levingston*, 221 S.W.3d 204. In *Levingston*, we held that the City of Houston's Bureau of Animal Regulation and Care ("BARC") could be considered an appropriate law enforcement authority for the plaintiff employee's reports of animal abuse and violations of the City Code, the Texas Penal Code, and the Texas Health and Safety Code. *Id.* at 225. In support of our holding, we cited evidence showing that BARC had the authority to regulate under or to enforce sections of the Health and Safety Code and the authority to investigate violations of criminal law under the city code and penal code.[20] Like the employee in *Levingston*, Okoli has alleged criminal conduct that his employing governmental entity had the authority to investigate.

TDHS's assertion that an employee is not entitled to the protection of the Whistleblower Act as a matter of law when the employee alerts his employer to the employer's own unlawful conduct lacks any support in the language of section 554.002. The fact that an employee makes a report

---

**20.** The case in *Levingston* was tried to a jury, and both parties presented significant evidence at trial regarding whether BARC, and the manager to whom the whistleblowing reports were made, could be considered appropriate law enforcement authorities. *Levingston*, 221 S.W.3d at 218–219. Although we determined that BARC could be considered an appropriate law enforcement authority, we also determined that the manager to whom the reports had been made at BARC had the power to investigate the reported violations of Texas Penal Code and was "in the best position to receive such reports *on behalf*" of BARC. *Id.* (emphasis added).

of a violation of law to his employer or superior regarding the work being performed by the governmental entity that employs him does not automatically disqualify that employee from protection under the Whistleblower Act. Moreover, the fact that the criminal conduct being reported might also provide a basis for internal employee discipline does not automatically render the Whistleblower Act inapplicable. *See Levingston*, 221 S.W.3d at 221 ("Just because many of Levingston's reports to Nix 'concerned employee performance failures' does not mean that his reports of the above cited instances did not concern 'a violation of any law.' ").

Finally, TDHS cites *Duvall v. Texas Department of Human Services* in support of its argument that TDHS administrators are not appropriate law enforcement authorities under the Whistleblower Act. 82 S.W.3d 474 (Tex.App.-Austin 2002, no pet.). In *Duvall*, the plaintiff TDHS employee reported inaccuracies in statistical methods used by a division of TDHS to compile "response time reports." *Id.* at 476. In his original petition, the plaintiff identified the criminal offense of tampering with a governmental record as the law that he believed TDHS had violated. *Id.* at 477 (citing Tex. Penal Code Ann. § 37.10 (Vernon Supp.2009)). In determining whether the plaintiff had made a report to an appropriate law enforcement authority under the Whistleblower Act, the court noted that the plaintiff had only presented evidence that the plaintiff's supervisor "had the authority to take *remedial action* with regard to the alleged inaccuracies in the response time reports." *Id.* at 481–82. The court concluded that because the Whistleblower Act did not refer to the authority to take "remedial action," but instead the authority to regulate under or enforce the law alleged to have been violated or to investigate or prosecute a violation of the criminal law, the plaintiff's evi-

dence that he believed that his supervisor had the authority to take "remedial action" did not satisfy the objective or subjective components of good faith in section 554.002(b). *Id.* at 482.

In contrast, here, Okoli presented evidence that he had reported unlawful conduct to the three supervisors in his chain of command because he believed, in accord with TDHS policy, that he was required to report the unlawful conduct to his supervisor and then up his chain of command. Okoli believed the conduct of Carroll and other TDHS employees was criminal, and he believed that TDHS was authorized to, among other things, investigate the matters. Even TDHS appears to agree that its OIG had the authority to receive and investigate such complaints of criminal conduct associated with programs administered by TDHS. Thus, *Duvall* is not applicable.

We overrule TDHS's first two issues.

### Fraud and Malice "Claims"

In its third issue, TDHS argues that the trial court erred in denying its plea to the jurisdiction on Okoli's fraud and malice claims because the claims "are barred by sovereign immunity."

 As we stated in our prior opinion, section 41.003 of the Texas Civil Practice and Remedies Code, which Okoli cites as the basis for his fraud and malice claims, "does not establish a cause of action." *Okoli*, 263 S.W.3d at 282. "Rather, that section allows for the recovery of exemplary damages upon clear and convincing evidence of fraud, malice, or gross negligence." *Id.* (citing Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (Vernon Supp. 2009)). By his concession in his briefing, Okoli has "judicially admitted" that his allegations of malice and fraud are merely allegations on which he might base a re-

quest for exemplary damages. *Id.* (citing *Jansen v. Fitzpatrick*, 14 S.W.3d 426, 431 (Tex.App.-Houston [14th Dist.] 2000, no pet.)). Because Okoli's allegations of fraud and malice are merely allegations supporting damages, they cannot "implicate subject-matter jurisdiction, and a jurisdictional plea [cannot] be used to attack them." *Id.*

We overrule TDHS's third issue.

### Conclusion

We affirm the order of the trial court.