

NUMBER 13-10-00083-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GERTRUD MORENO, **Appellant,**

**v.**

TEXAS A&M UNIVERSITY-KINGSVILLE, **Appellee.**

### On appeal from the 105th District Court
### of Kleberg County, Texas.

# OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Perkes**
**Opinion by Justice Rodriguez**

Appellant Gertrud Moreno challenges the plea to the jurisdiction and summary judgment granted in favor of appellee Texas A&M University-Kingsville (TAMUK) on Moreno's claim for retaliatory discharge under the Texas Whistleblowers Act. *See* TEX. GOV'T CODE ANN. § 554.002 (West 2004). By two issues, Moreno argues that the trial

court erred in granting TAMUK's: (1) motion for summary judgment because Moreno provided sufficient evidence to support all elements of her whistleblower claim; and (2) plea to the jurisdiction because her pleadings affirmatively demonstrated subject-matter jurisdiction. We reverse and remand.

### I. FACTUAL BACKGROUND

Moreno was employed by TAMUK as its Assistant Vice-President for Finance and Administration and Comptroller. Her supervisor was Thomas Saban, TAMUK's Vice-President of Finance and Administration. In December 2007, Saban asked Moreno to provide him information on the out-of-state tuition waiver available to certain TAMUK employees. Moreno researched the waiver and provided Saban the information from her research. In mid-December 2007, Saban applied for the tuition waiver for his daughter, who was to attend TAMUK in the spring semester of 2008, and paid tuition for his daughter at the Texas-resident rate.

Later in December 2007 and January 2008, Moreno received inquiries from various TAMUK officials regarding Saban's eligibility for the waiver. The waiver applied only to teachers and professors who were employed at least one-half time with higher education institutions. *See* TEX. EDUC. CODE. ANN. § 54.059 (West 2006). Moreno believed that the waiver was available only to faculty members, but ultimately, Moreno and the various officials who were questioning Saban's eligibility were uncertain whether, as Vice-President of Finance and Administration, Saban fell within that categorization. Nonetheless, Saban was eventually re-classified as a faculty member. However, TAMUK was unable to arrange for Saban to teach any classes.

2

At a conference in early February 2008, Moreno asked officials with the Texas Higher Education Coordinating Board (THECB) if they could clarify what would qualify an employee for the waiver. In response to her question, THECB officials informed Moreno that the work-load of the employee applying for the waiver must be fifty-percent teaching. Based on the THECB's interpretation, Saban did not qualify for the tuition waiver.

When Moreno returned to work after the conference, she conveyed this information to Saban. Saban became angry because he believed the matter had been resolved months before. He shook his finger in Moreno's face and asked why she was continuing to involve herself with this matter instead of focusing on her other work. Moreno left Saban's office. Saban later went to Moreno's office and apologized for his conduct. Moreno then informed Saban that she would be reporting the tuition issue to Rumaldo Juarez, the President of TAMUK, which she did later that day. Juarez and other TAMUK officials concluded that Saban was not eligible for the waiver, and Saban was required to pay the tuition that had been waived under his earlier application.

On February 29, 2008, Saban, along with representatives from TAMUK human resources, called Moreno to a conference room where she was given the choice of voluntarily resigning or being terminated. Moreno refused to resign, and Saban terminated her employment. Moreno was not given a reason for her termination. Moreno appealed her termination through TAMUK's grievance process, alleging that her termination was in retaliation for reporting the tuition-waiver issue. Moreno's appeal was investigated by Terisa Remelius, who, after interviewing numerous witnesses, concluded

3

that Saban had other legitimate reasons for terminating Moreno's employment and that Moreno's termination was not retaliatory.

## II. PROCEDURAL BACKGROUND

Moreno sued TAMUK and Saban, alleging violations of the Texas Whistleblowers Act and her right to free speech.[1] TAMUK filed a plea to the jurisdiction, arguing that Moreno failed to plead and prove facts sufficient to support the elements of her whistleblower claim and therefore failed to show a waiver of TAMUK's sovereign immunity. After discovery, TAMUK also filed a traditional motion for summary judgment, arguing that Moreno failed to create a fact issue that she (1) in good faith reported a violation of law, (2) in good faith made her report to an appropriate law enforcement authority, and (3) was terminated in retaliation for making a report.[2] Moreno responded to the summary judgment motion, contesting each ground advanced by TAMUK.[3] The trial court granted TAMUK's plea to the jurisdiction and motion for summary judgment and dismissed Moreno's claims with prejudice. This appeal followed.

## III. STANDARD OF REVIEW AND APPLICABLE LAW

---

[1] Moreno does not appeal the dismissal of her free speech claim or the dismissal of Saban from the lawsuit.

[2] TAMUK attached the following evidence to its motion for summary judgment: (1) excerpts from the depositions of Juarez, Moreno, Saban, and Michael McKinney, Chancellor of the Texas A&M University (TAMU) system; (2) Moreno's curriculum vitae; (3) Remelius's investigative report from Moreno's grievance proceedings; (4) Saban's tuition-waiver application; and (5) the form used to re-classify Saban as a faculty member.

[3] Moreno attached the following evidence to her response: (1) Moreno's affidavit; (2) TAMU policy 7.01 regarding ethics; (3) excerpts from the depositions of Kay Clayton, TAMUK provost at the time of the events underlying the law suit, McKinney, Saban, Remelius, and Juarez; (4) TAMU policy 21.04 regarding the control of fraud and fraudulent activities; (5) Governor Rick Perry's Executive Order 36 regarding the promulgation of policies to prevent, detect, and eliminate fraud, waste, and abuse; (6) Remelius's investigative report from Moreno's grievance proceeding; (7) TAMUK's interrogatory answers; and (8) various excerpts from Texas statutes and regulations.

Because the elements of a whistleblower claim are jurisdictional, a plaintiff must affirmatively plead facts and, if appropriate, produce evidence demonstrating those elements to show a waiver of the defendant's sovereign immunity. *State v. Lueck*, 290 S.W.3d 876, 883 (Tex. 2009) (holding that the elements of a whistleblower claim are jurisdictional facts); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225, 227 (Tex. 2004) (holding that "if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised"). If the plaintiff creates a fact issue with her evidence as to each element, it would be improper to grant the defendant's plea to the jurisdiction. *See City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008) (citing *Miranda*, 133 S.W.3d at 227-28). Similarly, to avoid traditional summary judgment, a whistleblower plaintiff must create fact issues as to all the challenged elements of her claim. *See* TEX. R. CIV. P. 166a(c).

Our review of Moreno's challenges to TAMUK's plea to the jurisdiction and summary judgment is therefore one and the same. In other words, to both establish waiver of immunity, and accordingly, subject-matter jurisdiction, and avoid summary judgment, Moreno must have created a genuine issue of material fact on each of the elements of her whistleblower action. *See id.*; *see also Miranda*, 133 S.W.3d at 227-28 (holding that, where a plea to the jurisdiction implicates jurisdictional facts and evidence related to those facts, the plaintiff must create a genuine issue of material fact to avoid dismissal for lack of subject-matter jurisdiction). In deciding whether there is a fact issue, we consider as true any evidence favorable to the non-movant. *See Llanes v. Corpus*

5

*Christi Indep. Sch. Dist.*, 64 S.W.3d 638, 641 (Tex. App.—Corpus Christi 2002, pet. denied) (citing *Am. Tobacco, Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997)) (other citations omitted); *see also Miranda*, 133 S.W.3d at 228 (acknowledging that, in the context of a plea to the jurisdiction, the standard for reviewing evidence of jurisdictional facts mirrors the standard for reviewing traditional summary judgment evidence). Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in her favor. *See Llanes*, 64 S.W.3d at 641 (citations omitted); *see also Miranda*, 133 S.W.3d at 228 (citations omitted).

The elements of a whistleblower cause of action are contained in section 554.002 of the government code:

> A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

TEX. GOV'T CODE. ANN. § 554.002(a); *see Lueck*, 290 S.W.3d 881. Thus, the elements of a whistleblower claim are: (1) that the plaintiff was a public employee, (2) that the defendant was a state or local governmental entity, (3) that the plaintiff reported in good faith a violation of law (4) to an appropriate law enforcement agency, and (5) that the plaintiff's report was the but-for cause of the defendant's suspending, firing, or otherwise discriminating against the plaintiff at the time the defendant took that action. *See* TEX. GOV'T CODE. ANN. § 554.002(a); *Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995) (explaining the causation element); *Scott v. Godwin*, 147 S.W.3d 609, 621 (Tex. App.—Corpus Christi 2004, pet. dism'd) (laying out the five elements).

6

We note that the Whistleblower Act is designed to enhance openness in government and compel the State's compliance with law by protecting those who inform authorities of wrongdoing. *Llanes*, 64 S.W.3d at 641. "Because the Act is remedial in nature, it should be liberally construed to effect its purpose." *City of Houston v. Levingston*, 221 S.W.3d 204, 218 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Llanes*, 64 S.W.3d at 641 (citing *Casteneda v. Tex. Dept. of Agric.*, 831 S.W.2d 501, 503 (Tex. App.—Corpus Christi 1992, writ denied)) (other citations omitted). "A liberal construction does not restrict the statute, but enlarges its scope and effect to effectuate the true legislative purpose." *Casteneda*, 831 S.W.2d at 503.

## IV. DISCUSSION

The first two elements of Moreno's whistleblower claim are undisputed—Moreno is a public employee, and TAMUK is a state governmental entity. Thus, whether TAMUK should have prevailed in the trial court depends on whether Moreno raised fact issues regarding the third, fourth, and fifth elements of her claim.

### A. Reported, in Good Faith, a Violation of Law

The third element of Moreno's whistleblower claim was that she reported, in good faith, a violation of law. *See* TEX. GOV'T CODE. ANN. § 554.002(a). Moreno asserts that she has created a fact issue on this element. We agree.

### 1. Law Prohibiting Complained-of Conduct

Although there is no requirement that an employee identify a specific law when making a report and no requirement that the employee establish an actual violation of the law, *Llanes*, 64 S.W.3d at 642, there must be some law prohibiting the

complained-of-conduct to give rise to a whistleblower claim. *Id.* at 642-43 ("[T]o recover under the Act, an employee must have a good[]faith belief that a law, which in fact exists, was violated."). We must therefore determine, as a threshold matter, whether a law existed that prohibited Saban's complained-of conduct.

Moreno argues that Saban's obtaining of the tuition waiver violated the following: (1) section 54.059 of Texas Education Code; and (2) rule 21.29 of title 19 of the Texas Administrative Code.[4] Section 54.059 provides as follows:

> A teacher or professor of an institution of higher education, and the spouse and children of such a teacher or professor, are entitled to register in an institution of higher education by paying the tuition fee and other fees or charges required for Texas residents without regard to the length of time the teacher or professor has resided in Texas. A teacher or professor of an institution of higher education and the teacher's or professor's family are entitled to the benefit of this section if the teacher or professor is employed at least one-half time on a regular monthly salary basis by an institution of higher education.

TEX. EDUC. CODE. ANN. § 54.059. Rule 21.29 provides as follows:

> A nonresident person (including a Citizen, Permanent Resident of the U.S., a person who is eligible to be a Permanent Resident of the U.S., and an eligible nonimmigrant) employed as a teacher or professor at least half time on a regular monthly salary basis (not as hourly employee) by an institution shall pay resident tuition at any institution in the state and the spouse and dependent children of the nonresident person shall also pay resident tuition.

*See* 19 TEX. ADMIN CODE. § 21.29(2)(A) (2010).

Relevant to this case, under section 54.059 and rule 21.29, the child of a teacher or professor is entitled to register in an institution of higher education by paying in-state, or

---

[4] Although Moreno cites to rule 21.29 of title 19 of the administrative code, that rule did not take effect until May 21, 2008. *See* 33 TEX. REG. 3939 (2008) (to be codified at 19 TEX. ADMIN. CODE § 21.29) (proposed Feb. 29, 2008) (Tex. Higher Educ. Coordinating Bd.). However, the parties appear to agree that rule 21.29 is identical, for our purposes, to the rule in effect at the time of Saban's alleged conduct, so we will consider the language of rule 21.29 in our analysis. *See* 19 TEX. ADMIN. CODE § 21.29 (2010).

8

Texas resident, tuition only if employed at least half-time on a regular monthly salary basis by an institution of higher education. If a teacher or professor pays in-state tuition for his child without complying with this requirement, he or she does not comply with section 54.059 or rule 21.29. Here, Moreno alleged that Saban did not comply with the half-time requirement set out in section 54.059 and rule 21.29. We therefore conclude that a law exists which prohibits the complained-of conduct in this case and gives rise to a whistleblower claim. *See Llanes*, 64 S.W.3d at 642-43; *see also* TEX. GOV'T CODE ANN. § 554.001(1) (West 2005) (defining "law" as a "state or federal statute" or "a rule adopted under a statute or ordinance"); *Casteneda*, 831 S.W.2d at 503 (prohibiting the reviewing court from circumscribing the scope of the Act because we are bound to liberally construe it to effect its remedial purpose). Having so concluded, the only remaining question in our analysis of the third element is whether Moreno created a fact issue that she had a good-faith belief that Saban violated the law by applying for and receiving the benefits of the tuition waiver—we conclude that she did.

**2. Good Faith Belief**

We analyze good faith using an objective standard and a subjective standard. *Wichita County v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996). "'Good faith' means that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience." *Id.*

It is not disputed that, at the time she made her report, Moreno subjectively believed that Saban had violated the law. *See id.* With regard to the objective reasonableness of her belief, we believe that Moreno produced evidence creating a fact

9

issue. At a conference in early February 2008, officials from THECB told Moreno that the only employees that qualified for the tuition waiver were those whose workload included a fifty-percent teaching component. Moreno produced evidence that Saban did not meet this requirement because TAMUK officials were unable to arrange for Saban to teach a class. We note that the evidence also showed that, prior to Moreno's conference, neither Moreno nor other TAMUK officials involved in processing the tuition waiver clearly understood the meaning and applicability of the law with regard to Saban's position. However, because we must indulge every reasonable inference favorable to Moreno, we conclude that an employee with Moreno's training and background could have reasonably relied on the interpretation of the law provided by THECB in forming her belief about whether Saban's paying of in-state tuition based on the waiver violated the law. *See id.*; *see also Miranda*, 133 S.W.3d at 228; *Llanes*, 64 S.W.3d at 641.

TAMUK contends that "no law had been violated at the time of Moreno's report" because the semester was still on-going and "Saban had not yet failed in his teaching obligations." Citing *State v. Lueck*, TAMUK argues that Moreno's report concerned "only the possibility of a future violation of an unwritten interpretation of the statute." *See* 290 S.W.3d at 885. Further, TAMUK argues that Moreno's belief was not in good-faith because the wording of section 54.059 and rule 21.29 makes it "unclear whether the waiver applies to part-time employees who also teach . . . or employees who teach at least 50% of the time," and Moreno's reliance on the interpretation she received from THECB officials at her conference was not reasonable.

First, TAMUK's reliance on *Lueck* is misplaced under the facts of this case. In *Lueck*, the plaintiff pleaded that he "believed and reported in good faith that if the Department [of Transportation] did not pursue an immediate and positive resolution to [a demand for payment of a contract,] the Department would violate federal and state law by failing to remedy non-compliance with the federal and state reporting requirements." *Id.* (internal quotation marks omitted). The *Lueck* Court then held that "[t]his allegation merely recites Lueck's prediction of a possible regulatory non-compliance" and that "[s]uch a regulatory non-compliance . . . does not equate to a violation of law . . . within the meaning of the Whistleblower Act." *Id.* Here, unlike the plaintiff in *Lueck* whose report concerned a possible future violation of federal and state laws, Moreno reported an existing violation of law. At the time of Moreno's report, Saban had received the benefit of the faculty waiver in that he paid the lesser in-state tuition for his daughter to attend TAMUK in the spring 2008 semester. We are therefore unpersuaded that *Lueck* precludes Moreno's claim.

Second, TAMUK's argument regarding the clarity of the wording in section 54.059 and rule 21.29 is irrelevant in the context of Moreno's burden. Addressing good faith, Moreno was required to produce evidence creating a fact issue regarding the reasonableness of her belief that those laws were violated by Saban's conduct. *See* TEX. R. CIV. P. 166a(c); *Miranda*, 133 S.W.3d at 227-28. A whistleblower plaintiff is not required to establish that an actual violation of the law occurred. *See Llanes*, 64 S.W.3d at 642. A law must exist that prohibits the complained-of conduct, but so long as an employee believes and reports in good faith that a violation of that existing law has

11

occurred, she is still protected by the whistleblower statute even if she is wrong about the legal effect of the facts. *See id.* at 642-43; *Casteneda*, 831 S.W.2d at 504. We have already concluded that a law exists that prohibits the complained-of conduct in this case. We further conclude that Moreno met her burden of creating a fact issue by producing evidence that THECB—the state agency that promulgated rule 21.29, which is the administrative companion to section 54.059 of the government code, *see* 33 TEX. REG. 3939 (2008) (to be codified at 19 TEX. ADMIN. CODE § 21.29) (proposed Feb. 29, 2008) (Tex. Higher Educ. Coordinating Bd.)—interpreted section 54.059 and rule 21.29 to require a fifty-percent teaching workload. This is evidence that Moreno had a reasonable basis for believing that Saban's conduct violated the law. And it is the reasonableness of Moreno's belief that is the relevant material fact issue she was required to create to satisfy the third element of her claim.

In sum, Moreno produced evidence showing that she reported, in good faith, a violation of law by Saban. *See Hart*, 917 S.W.3d at 784. Viewing this evidence in the light most favorable to Moreno, we conclude that she created a fact issue regarding the third element of her whistleblower claim. *See* TEX. R. CIV. P. 166a(c); *Miranda*, 133 S.W.3d at 227-28.

### B. Appropriate Law Enforcement Authority

The fourth element of Moreno's whistleblower claim was that she made her report, in good faith, to an appropriate law enforcement authority. *See* TEX. GOV'T CODE. ANN. § 554.002(a). Under the Act, "a report is made to an appropriate law enforcement authority if the authority is part of a state or local government entity . . . that the employee

12

in good faith believes is authorized to . . . regulate under or enforce the law alleged to be violated in the report." *Id.* § 554.002(b)(1). Like the third element, the good faith requirement in the fourth element also involves both subjective and objective components. Good faith, in the context of an appropriate law enforcement authority, means that: "(1) the employee believed the governmental entity was authorized to . . . regulate under or enforce the law alleged to be violated in the report . . . ; and (2) the employee's belief was reasonable in light of the employee's training and experience." *Tex. Dept. of Transp. v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002).

Moreno claims that she made her report to THECB officials, Saban, and Juarez. As with her third element, it is not disputed that Moreno had a subjective belief that Juarez, in particular, was authorized to regulate under or enforce the laws alleged to be violated here. *See id.* With regard to the reasonableness of her belief that Juarez was an appropriate law enforcement authority, Moreno produced a TAMU system policy providing for the promulgation of policies to control "Fraud and Fraudulent Actions." The policy covered "illegal, improper, and dishonest acts and/or practices," which the policy referred to as "'fraud' or fraudulent acts,' 'fraudulent incidents,' or 'fraudulent practices.'" The policy stated that, except in cases of "reportable theft incidents," an employee should report "suspected fraudulent incidents or practices" to her supervisor, the "CEO" (i.e., the university president), or the Chief Auditor. Moreno also produced evidence that both Juarez and Saban believed that Juarez would have been the appropriate person to whom a report of a violation of the tuition waiver should be made. Michael McKinney, Chancellor of the Texas A&M University (TAMU) system, similarly testified in his

13

deposition that the university president would be the appropriate person to whom a violation of the tuition waiver provision should be reported; McKinney testified that, unless a report involved theft, the report should stay within the university system. Juarez further testified in his deposition that, as President of TAMUK, he is required to ensure that the university is following laws, rules, and regulations, including those rules and regulations promulgated by THECB. Finally, Moreno produced evidence that, when she made her report to Juarez, Saban was shortly thereafter required to pay the additional tuition required for non-resident students.

Citing *Needham* and other appellate court opinions, TAMUK contends that Moreno's belief could not have been reasonable because Juarez's ability to "discipline [his] employees internally for their conduct is not sufficient to meet the Whistleblower Act's definition of an appropriate law enforcement authority." *See Needham*, 82 S.W.3d at 320; *see also City of Houston v. Kallina*, 97 S.W.3d at 170, 173-74 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (holding that the supervisor was not an appropriate law enforcement authority for an employee's report of theft because the supervisor had "authority to investigate employees' conduct and carry out internal disciplinary procedures, but no authority to enforce the theft laws of the state of Texas"); *Tex. Dep't of Transp. v. Garcia*, No. 13-07-004-CV, 2010 WL 2543899, at *2 (Tex. App.—Corpus Christi June 24, 2010, no pet.) (mem. op.) (holding that an "internal complaint" to Texas Department of Transportation "enforcement authorities" who only had the power to "conduct disciplinary procedures" was not a report to an appropriate law enforcement authority). "In other words," TAMUK contends, "the ability to require an

14

employee to comply with state law does not make a person an appropriate law enforcement authority," and "the Court must [instead] look to whether the entity has authority to enforce the law allegedly violated." *See Roberts v. Titus County Mem'l Hosp.*, 159 S.W.3d 764, 771-72 (Tex. App.—Texarkana 2005, pet. denied) (holding that hospital officials' "duty to obey the law . . . is not the same as being a governmental entity authorized to regulate under or enforce" the law alleged to be violated and that the plaintiff failed to produce evidence in this regard); *City of Fort Worth v. DeOreo*, 114 S.W.3d 664, 669 (Tex. App.—Fort Worth 2003, no pet.) (holding that "a city's general authority to regulate under, enforce, and investigate claims of sexual harassment is not enough to make it an appropriate law enforcement authority under the Act"). We are unpersuaded by TAMUK's contentions.

First, TAMUK's reliance on cases holding that an employer's ability to internally discipline its employees is misplaced. Here, Moreno's allegations do not involve the mere internal disciplining of Saban for violating section 54.059 and rule 21.29. Rather, Moreno alleged that Saban violated a statute and produced evidence that Juarez had the authority to enforce that statute at TAMUK. *See Needham*, 82 S.W.3d at 318-19, 321-22 (denying whistleblower protection to a plaintiff who argued, in part, that an employers' ability to internally discipline makes the employer an appropriate authority under the Act).

Next, we do not believe the cases cited by TAMUK stand for the broad proposition that an employer's ability to require an employee to comply with state law is not sufficient under the Act and thus stands as an absolute bar to a plaintiff's cause of action. Such a construction would contravene our obligation to liberally construe the Act. *See*

15

*Levingston*, 221 S.W.3d at 218; *Llanes*, 64 S.W.3d at 641. Further, the cases cited by TAMUK involve either a lack of evidence of the plaintiff's good faith belief or matter-of-law determinations with no consideration of the relevant evidence of the plaintiff's good faith belief. *See Roberts*, 159 S.W.3d at 771-72; *DeOreo*, 114 S.W.3d at 668-69.[5] That is not the circumstance before us in this appeal. For although it is true that a reviewing court must consider whether an entity actually has the authority to regulate under or enforce the law alleged to be violated, a plaintiff's whistleblower claim can nonetheless survive so long as she meets the good faith requirement. In other words, as reasoned by the Texas Supreme Court in *Needham*, "our conclusion that [TAMUK] is not a governmental entity authorized to regulate under, enforce, investigate, or prosecute [section 54.059 and rule 21.29] does not end our inquiry." *See* 82 S.W.3d at 320. Moreno "may still obtain Whistleblower Act protection if [she] in good faith believed that [TAMUK] was an appropriate law enforcement authority as the statute defines the term." *See id.*

As previously discussed, Moreno produced evidence showing that TAMUK employees were instructed to report suspected "illegal, improper, or dishonest" conduct to their supervisors or the TAMUK president or chief auditor. *See Tex. Dep't of Human Servs. v. Okoli*, 317 S.W.3d 800, 811 (Tex. App.—Houston [1st Dist.] 2010, pet. filed)

---

[5] We note that in *Duvall v. Texas Department of Human Services*, the Austin Court of Appeals held that, "[i]n the absence of other evidence, the fact that [the whistleblower] believed that [his supervisor] had the authority to take remedial action[, as opposed to regulating under or enforcing the law alleged to be violated,] does not satisfy the objective or subjective component of good faith contained in section 554.002(b)." 82 S.W.3d 474, 482 (Tex. App.—Austin 2002, no pet.). The record in this case, however, does contain other evidence relevant to good faith—most importantly, evidence that Moreno was following a TAMU system policy in reporting the tuition waiver violation to Juarez. Further, unlike the plaintiff in *Duvall*, Moreno produced evidence that Juarez did have the authority to enforce section 54.059 and rule 21.29, rather than to merely take remedial action.

16

(holding that whistleblower produced sufficient evidence of his good faith belief by citing to an internal policy requiring him to report misconduct "to his supervisor and then up his chain of command"); *Univ. of Tex. Sw. Med. Ctr. v. Gentilello*, 317 S.W.3d 865, 871 (Tex. App.—Dallas 2010, pet. filed) (holding that whistleblower produced sufficient evidence of good faith by reporting Medicaid and Medicare violations to his supervisor who set policies and had power to investigate violations).[6]  Moreno also produced evidence that Juarez had the ability to enforce compliance with the tuition waiver provision on his campus and apparently did so, as Saban was required to pay the additional out-of-state tuition amount shortly after Moreno's report.  Crucially, unlike the plaintiff in *Needham* whose good faith argument relied entirely on the assumption that "an employer's power to discipline an employee" for violating the law falls within the Act's definition of appropriate law enforcement authority, the evidence demonstrated that Moreno's belief was based on the assumption that Juarez can actually enforce compliance with section 54.049 and rule 21.29, not merely internally discipline Saban, and she produced evidence supporting the reasonableness of that belief.  *See Needham,* 82 S.W.3d at 321; *see also Okoli*, 317 S.W.3d at 810-11 (noting that an employee is not automatically disqualified from protection under the Whistleblower Act merely because she makes her report to a superior or because the reported conduct "might also provide a basis for internal employee discipline").

In sum, Moreno's evidence showed that she followed TAMUK policy in reporting the tuition waiver violation to Juarez and that Juarez had both the duty and the power to

---

[6] As of the date of this opinion, the Texas Supreme Court has requested briefing on the merits, but has neither set oral argument nor taken any other action in these cases.

17

enforce section 54.059 and rule 21.29 at TAMUK. Thus, based on the foregoing and indulging all reasonable inferences in the evidence, as we must, in favor of Moreno, we conclude that Moreno created a fact issue regarding the fourth issue of her whistleblower claim, i.e., the reasonableness of her belief that Juarez was an appropriate law enforcement authority.[7] *See* TEX. R. CIV. P. 166a(c); *Miranda*, 133 S.W.3d at 227-28.

## C. Causation

The fifth and final element of Moreno's whistleblower claim was that she was terminated because of her report. *See* TEX. GOV'T CODE. ANN. § 554.002(a). To show causation in a whistleblower case, an employee "must demonstrate that after he or she reported a violation of the law in good faith to an appropriate law enforcement authority, the employee suffered discriminatory conduct by his or her employer that would not have occurred when it did if the employee had not reported the illegal conduct." *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000) (citing *Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995)). In other words, the employee must establish a "but-for" causal nexus between his report and the employer's prohibited conduct. *Tex. Dep't of Criminal Justice v. McElyea*, 239 S.W.3d 842, 855 (Tex. App.—Austin 2007, pet. denied). Circumstantial evidence is sufficient to establish the causal link between the adverse employment action and the reporting of illegal conduct and includes evidence that the employer (1) had knowledge of the report of illegal conduct, (2) expressed a negative attitude toward the employee's report of the conduct, (3) failed to adhere to established policies regarding employment decisions, (4) treated the reporting employee

---

[7] Because we conclude that Juarez was an appropriate law enforcement authority in this case, we need not address Moreno's reports to THECB officials and Saban. *See* TEX. R. APP. P. 47.1.

discriminatorily in comparison to similarly situated employees, and (5) stated false alternative reasons for the adverse employment action. *Zimlich*, 29 S.W.3d at 69.

It is undisputed that Moreno made the report directly to Saban and informed him she was also taking the matter to Juarez. It is also undisputed that Saban became very angry when Moreno told him what she had learned about the tuition waiver at her conference. Thus, there is circumstantial evidence of the first two types.

And while it is true that circumstantial evidence of the employer's knowledge and negative attitude is not alone sufficient to show a causal link, *see id.*; *see also Hurley v. Tarrant County*, 232 S.W.3d 781, 787 (Tex. App.—Fort Worth 2007, no pet.) (holding that evidence of an employer's negative attitude toward an employee's report "presupposes" the employer's knowledge such that evidence of knowledge alone is also not enough), Moreno also produced evidence to the trial court that TAMUK failed to adhere to established policies in terminating her and treated her differently than other similarly situated employees. In his deposition, Juarez testified that TAMUK has a progressive discipline policy. Kay Clayton, the provost of TAMUK at the time of the events giving rise to this case, testified in her deposition that Moreno was the first TAMUK employee she knew of who was terminated without receiving progressive discipline. Juarez also testified that Moreno was not given a severance package as were other similarly situated employees.

In its motion for summary judgment, TAMUK produced evidence that Saban had other legitimate, non-retaliatory reasons for terminating Moreno's employment, including that Moreno: (1) was unable to complete specific and complicated budget-related tasks

19

on her own; (2) did not provide budget reports to Saban in a timely manner after he requested them; (3) interfered with and delayed the hiring process for an engineer because she did not agree with the salary that Saban proposed for him; (4) failed to provide required information and services to other TAMUK departments in a timely manner; and (5) was generally uncooperative and difficult to work with. Further, in various interrogatory answers, Saban stated he had spoken with McKinney about his desire to terminate Moreno; during this meeting, Saban claims that McKinney told him to "get rid" of Moreno.

Moreno produced evidence, however, that these stated reasons for her termination were pretextual. Clayton testified in her deposition that Moreno was a very thorough, knowledgeable, and ethical person. Clayton testified that Moreno's communication, public relations, and resource management skills "far exceed[ed] expectations" and that her ability to cooperate "exceed[ed] expectations." Clayton testified that Moreno's "level of competency and efficiency" did not change after Saban became Moreno's supervisor. Remelius testified in her deposition that Moreno had a "good personality," was "not difficult to get along with or anything," and "was typically fairly responsive to me, to any requests that I had." In his deposition, Juarez testified that, although Saban expressed concerns about Moreno's performance in December 2007, Saban stated that his concerns were "[n]othing to worry about" and "[n]othing serious." Finally, and critically, McKinney denied in his deposition that he told Saban to terminate Moreno's employment.

A whistleblower plaintiff need not prove that her reporting of an illegal activity was the sole reason for her employer's adverse action. *Hinds*, 904 S.W.2d at 634. So although TAMUK presented evidence that Moreno was terminated because of her poor job performance, Moreno produced ample circumstantial evidence, in response, that her termination nonetheless would not have occurred when it did had she not reported Saban's violation of the tuition waiver. *See id.* at 633; *McElyea*, 239 S.W.3d at 855. Thus, indulging all reasonable inferences in favor of Moreno, we conclude that her evidence raised a material fact issue as to the existence of a causal link between her report and TAMUK's alleged retaliatory conduct. *See* Tex. R. Civ. P. 166a(c); *Miranda*, 133 S.W.3d at 227-28.

### D. Summary

Because Moreno produced evidence creating fact issues as to each element of her whistleblower claim, the trial court erred in granting TAMUK's plea to the jurisdiction and motion for summary judgment. We therefore sustain both of Moreno's issues.

### V. Conclusion

We reverse the judgment of the trial court granting TAMUK's plea to the jurisdiction and motion for summary judgment and dismissing Moreno's whistleblower claim and remand for proceedings consistent with this opinion.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
5th day of May, 2011.

21