# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00244-CV

Rosaena Resendez, Appellant

v.

Texas Commission on Environmental Quality, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. D-1-GN-10-04081, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## O P I N I O N

Appellant Rosaena Resendez appeals from the trial court's order dismissing her suit against her former employer, the Texas Commission on Environmental Quality (the "Commission"), for damages under the Texas Whistleblower Act. *See* Tex. Gov't. Code Ann. §§ 554.001–.009 (West 2012). The Commission filed a plea to the jurisdiction, arguing that sovereign immunity had not been waived because Resendez failed to allege a valid whistleblower claim. The trial court granted the plea to the jurisdiction and dismissed Resendez's suit. On appeal, Resendez claims that the trial court erred in granting the plea to the jurisdiction because her petition sufficiently alleges a valid cause of action. We reverse the trial court's order granting the Commission's plea to the jurisdiction and remand this case for further proceedings.

**BACKGROUND**

Resendez worked as an employee for the State of Texas for over thirty-four years.[1] Prior to the events of this case, Resendez had no history of incidents or conflicts during her tenure as a state employee. As of October of 2009, Resendez worked for the Commission as a Texas Emissions Reduction Plan ("TERP") Usage Monitor. TERP is a state program administered by the Commission which provides grants and rebates to Texas residents as an incentive to replace certain automobiles with lower emission vehicles. *See generally* Tex. Health & Safety Code Ann. §§ 386.001–386.252 (West Supp. 2012). Between 2001 and 2008, the Commission awarded over $700 million in TERP grants and rebates.

In 2010, the Texas State Auditor released an audit report concerning the Commission's administration of the TERP program (the "TERP audit report"). The purpose of the audit was to determine, among other things, "whether internal controls for TERP grant programs at the Commission provide assurance that the programs comply with state law . . . ." Based on this audit, which reviewed the Commission's "selection, monitoring, and enforcement activities" from fiscal year 2006 through fiscal year 2010, the state auditor concluded that the Commission needed to strengthen its review of the information applicants have provided in order to better ensure that applicants were in fact eligible to receive TERP funds.

Specifically, the TERP audit report recommends that the Commission ensure that the social security numbers provided by applicants are "valid and match the applicant's name." The audit report states that the Commission submitted applicants' social security numbers to the

---

[1] The facts recited herein are taken from Resendez's original petition and evidence that was before the trial court when it ruled on the Commission's plea to the jurisdiction.

2

Texas Comptroller of Public Accounts "so that the Comptroller's Office can identify whether the applicants have outstanding debt or tax liabilities," but otherwise did not appear to verify the applicants' information. Based on a limited review, the TERP audit identified two applicants whose social security numbers belonged to people who were deceased. The Commission ultimately agreed with some of the TERP audit report's recommendations, and the Commission stated that by the Spring of 2011, it would purchase a copy of the "Social Security Administration's Death Master File" so that it could verify whether applicants were using deceased persons' social security numbers. The Commission also pledged to begin requiring applicants to submit photocopies of their state or federal identification documents.

In October of 2009, prior to the release of the TERP audit report, Resendez was assigned to investigate the whereabouts of a truck that was purchased with TERP funds. Resendez learned that the owner of the truck was a non-citizen who had been deported to Mexico. Based on her investigation, Resendez reported to Steve Dayton, the team leader in charge of the "Grant Development Team," that "individuals illegally in the United States were receiving TERP money." Resendez believed that these applicants were committing an illegal act by defrauding the state government, and she offered to investigate what procedures could be implemented to prevent this fraud in the future. Dayton explained that the Commission was "under a lot of pressure" to quickly review and approve TERP applications and that it "would be too expensive and time consuming to verify an applicant's social security number."

The following day, Joe Walton, the Commission's "Implementation Grants Section Manager," visited Resendez in her office to discuss her concerns. Resendez again stated that certain TERP applicants were defrauding the state, but Walton told her to "drop it." Four days later,

3

Walton performed a formal "write-up" of Resendez, at which time he admonished her both orally and in writing that she was being "disruptive in the workplace." The written "Employee Conference Record" states that Resendez was being "argumentative with [Dayton] by making allegations that the TERP program issues grants to illegal aliens," that she became argumentative with Walton during their meeting the next day, and that she threatened to "contact the Legislators, INS, and EPA about the TERP program." Finally, the written admonishment instructed Resendez that:

> (1) As a TERP usage monitor you should continue to perform your job duties including alerting your supervisor when a grantee may be in non-compliance with a grant. If you have a reasonable basis to believe that a law has been violated, you need to report it to management.
>
> (2) Conduct yourself professionally and refrain from engaging in gossip, rumors or other conduct that is disruptive to your manager and coworkers.

According to Resendez, over the next three months, her supervisors continued to find other false reasons to discipline her. In February of 2010, Resendez was placed on employment "probation" which was scheduled to end August 10, 2010.

On July 23, 2010, Resendez spoke with David Brymer, the director of the Commission's Air Quality Division. Resendez told Brymer about her prior conversations with Dayton and Walton in which she "reported to them the fraudulent activity." Brymer "cut [her] off and said 'this is not the time or place to talk about that.'" A week after this meeting, Resendez sent Brymer a letter in which she again reported her conversations with Dayton and Walton. On July 29, 2010, Resendez told State Senator Juan Hinojosa's office that she had "reported that people illegally in the country were receiving TERP funds to [Commission] supervisors."

4

On August 4, 2010, less than a week after she had contacted Senator Hinojosa's office, Resendez was issued a notice of termination. After her grievance was denied, Resendez filed this underlying lawsuit, in which she alleges that her termination violated the Texas Whistleblower Act. *See* Tex. Gov't Code Ann. §§ 554.001–.009. Specifically, Resendez asserts in her original petition that she made a good faith report that her employer or another public employee violated the law, she made the report to an appropriate law-enforcement authority, and as a result of her report, the Commission terminated her employment. *See id.* § 554.002.

In response to Resendez's petition, the Commission filed a plea to the jurisdiction, claiming that Resendez failed to sufficiently plead a valid whistleblower claim. In response to the Commission's plea, Resendez reasserted the facts outlined in her petition and argued that they constituted a valid whistleblower claim. Attached to Resendez's response were copies of (1) the TERP audit report (2) Walton's write-up of Resendez, and (3) Resendez's sworn affidavits. In these affidavits, Resendez states that she believed that "individuals receiving TERP funds were committing an illegal act by defrauding the state government out of taxpayer funds" and that she believed that Dayton and Walton "could put a stop to the illegal activity by investigating and reporting the fraud." She also states that:

> At the time I made all these reports to all three of my supervisors and Senator Hinojosa, I believed that it was illegal for state employees not to report, and to not prevent, fraud being undertaken on the state government by individuals fraudulently securing TERP funds. I also believed that my supervisors and a State Senator had the authority to investigate these violations of the law.

Following a hearing and additional briefing by the parties, the trial court sustained the Commission's plea to the jurisdiction and dismissed Resendez's case. This appeal followed.

## STANDARD OF REVIEW

Whether a court has subject-matter jurisdiction is a question of law which we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The plaintiff has the burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction. *Id*. When subject-matter jurisdiction is premised on a cause of action under the whistleblower act, the plaintiff must allege facts which, if true, would establish a violation of that act. *State of Tex. v. Lueck*, 290 S.W.3d 876, 880–81 (Tex. 2009). When a plea to the jurisdiction challenges the pleadings, we construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Miranda*, 133 S.W.3d at 226–27. If the pleadings do not affirmatively demonstrate an incurable defect in jurisdiction, then the plaintiff should have the opportunity to amend before the plea can be granted. *Id.*; *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). If the pleadings affirmatively negate jurisdiction, the trial court may promptly grant the plea without allowing time to amend. *Miranda*, 133 S.W.3d at 227.

However, "a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). We do so because courts are required to determine if they have subject-matter jurisdiction at the earliest possible moment. *Miranda*, 133 S.W.3d at 226. Where, as here, the jurisdictional issues and accompanying evidence implicate the merits of the case, the defendant "is put to a burden very similar to that of a movant for summary judgment." *See University of Tex. v. Poindexter*, 306 S.W.3d 798, 806–07 (Tex. App.—Austin 2009, no pet.). If the record raises a fact question that requires addressing the merits of the case in order to resolve jurisdiction, then the case may proceed. *Miranda*, 133 S.W.3d

6

at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact question, the court rules on jurisdiction as a matter of law. *Id.*

## DISCUSSION

We take great care in addressing issues of a public whistleblower suit. As this Court has noted:

> The State of Texas elevates public employees who report legal wrongdoing to a protected status as a matter of fundamental policy. The State views whistleblowing by a public employee as a courageous act of loyalty to the larger community, and we allow whistleblowing public employees to be made whole through lawsuits against the State.

*Texas Dep't of Assistive & Rehabilitative Servs. v. Howard*, 182 S.W.3d 393, 399 (Tex. App.—Austin 2005, pet. denied). The whistleblower act is "designed to enhance openness in government and compel the State's compliance with law by protecting those who inform authorities of wrongdoing." *Id.* (citing *City of New Braunfels v. Allen*, 132 S.W.3d 157, 161 (Tex. App.—Austin 2004, no pet.)). Because the whistleblower act is remedial in nature, we construe its provisions liberally in order to effectuate its purpose. *Texas Dep't of Criminal Justice v. McElyea*, 239 S.W.3d 842, 849 (Tex. App.—Austin 2007, pet. denied) (citing *University of Houston v. Barth*, 178 S.W.3d 157, 162 (Tex. App.—Houston [1st Dist.] 2005, no pet.)).

In her sole issue on appeal, Resendez argues that the trial court erred in granting the Commission's plea to the jurisdiction. Specifically, Resendez asserts that she pleaded a valid claim under the Texas Whistleblower Act, and therefore her suit falls within the act's waiver of sovereign immunity. *See* Tex. Gov't Code Ann. §§ 554.002, .0035. Generally, sovereign immunity protects

the state and its various divisions, such as the Commission, from suit and liability.  *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011).  "The waiver of [sovereign] immunity is a matter addressed to the Legislature," which courts may not disturb.  *Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 813–14 (Tex. 1993) (quoting *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976)).  Without such a waiver, sovereign immunity deprives a court of subject-matter jurisdiction.  *Miranda*, 133 S.W.3d at 224.

In keeping with its purpose of protecting public employees who speak out against unlawful conduct, section 554.0035 of the whistleblower act waives sovereign immunity "to the extent of liability for the relief allowed under this chapter for a violation of this chapter."  *See* Tex. Gov't Code Ann. § 554.035.  The supreme court has interpreted this to be "a limited waiver of immunity that allows consideration of the section 554.002(a) elements, to the extent necessary in determining whether the claim falls within the jurisdictional confines of section 554.0035."  *Lueck*, 290 S.W.3d at 883.  Thus, in order to qualify for section 554.0035's limited waiver of immunity, Resendez must plead facts which, if true, establish a violation of section 554.002 of the whistleblower act.  *See id.*  To establish a violation of section 554.002, Resendez must allege the following elements:  (1) she was a public employee; (2) she made a good faith report of a violation of law by her employing governmental entity or another public employee; (3) she made the report to an appropriate law-enforcement authority; and (4) she suffered retaliation as a result of making the report.  *See* Tex. Gov't Code Ann. § 554.002(a); *Dallas Cnty. v. Logan*, 359 S.W.3d 367, 370 (Tex. App.—Dallas 2012, pet. filed).

The supreme court has emphasized that "[a]lthough the section 554.002(a) elements must be included within the pleadings . . . the [employee's] burden of proof with respect to these

jurisdictional facts 'does not involve a significant inquiry into the substance of the claims.'" *Lueck*, 290 S.W.3d at 884 (quoting *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554). "'[I]f a plea to the jurisdiction requires the trial court to wade deeply into the lawsuit's merits, it is not a valid plea.'" *Id.* (quoting *Miranda*, 133 S.W.3d at 235 (Jefferson, C.J., dissenting)). In reviewing a plea to the jurisdiction, courts consider the plaintiff's pleadings and factual assertions, as well as any evidence in the record that is relevant to the jurisdictional issue. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010). Furthermore, courts indulge every reasonable inference in favor of the non-movant and resolve any doubts in her favor. *See Miranda*, 133 S.W.3d at 228 (internal citations omitted). If the jurisdictional facts implicate the merits of the case and the evidence creates a "fact question regarding the jurisdictional issue," then the plea to the jurisdiction should be denied. *Gonzalez*, 325 S.W.3d at 625–26.

In this case, the Commission did not present any evidence or challenge the evidence presented by Resendez. In addition, the Commission did not challenge any of the factual allegations Resendez asserts in her original petition. Thus, we take Resendez's allegations as true and treat the evidence as undisputed. *See id.* Furthermore, the Commission does not dispute—and nothing in the record contradicts—Resendez's claim that she was a public employee and that she was terminated because of the reports she made. Therefore, we conclude that the record at least raises a fact issue about the first and fourth elements of Resendez's whistleblower claim. *See Logan*, 359 S.W.3d at 370. The Commission asserts that Resendez has failed to sufficiently show that (a) she made a good faith report of violations of law by her employing governmental entity or another public employee and (b) she made the report to an appropriate law-enforcement authority. *See id.*; *see also*

9

Tex. Gov't Code Ann. § 554.002(a). We address whether Resendez has raised a fact issue about these two elements of her whistleblower claim separately.

**Violations of law by public employees**

The second element of a whistleblower claim requires that an employee make a good faith report of a violation of law by her employing governmental entity or another public employee. *See* Tex. Gov't Code Ann. § 554.002(a). At the time Resendez made the underlying reports, she believed that public employees had a legal obligation to report and prevent fraud being committed against the state.[2] She reported to the head of her division, and ultimately to a state senator, that Dayton and Walton had failed to report fraud being committed against the state.[3] Thus, Resendez asserts that she created a fact issue with regard to this second element. We agree.

*Good-faith belief of violation of law*

In the context of a whistleblower claim, "good faith" has both a subjective and objective component. *See Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 319 (Tex. 2002)

---

[2] Although Resendez's initial complaint states that she reported that "her employer . . . violated the law," none of the facts in her complaint nor her subsequent affidavits assert that she believed the Commission itself was violating the law. Resendez's conclusory statement in her complaint does not provide sufficient jurisdictional facts. *See Larsen v. Santa Fe Indep. Sch. Dist.*, 296 S.W.3d 118, 131–32 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Thus, Resendez is protected under the whistleblower act, if at all, because she reported violations of law by another public employee.

[3] Resendez's reporting that TERP applicants were violating the law cannot form the basis of valid whistleblower claim because TERP applicants are not public employees. *See* Tex. Gov't Code Ann. § 554.002(a) (West 2012); *Saldivar v. Texas Dep't of Assistive & Rehabilitative Servs.*, No. H-08-1820, 2009 U.S. Dist. LEXIS 94979, at *38–40 (S.D. Tex. Oct. 13, 2009) (concluding that plaintiff failed to state claim under Texas Whistleblower Act when he reported that third-party vendors were violating law). Thus, Resendez is protected under the whistleblower act, if at all, because she reported that her supervisors were violating the law.

(citing *Wichita Cnty. v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996)). "'Good faith' means that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience." *Hart*, 917 S.W.2d at 784. The subjective component ensures that an employee seeking whistleblower protection actually believed that she was reporting a violation of law. *See Needham*, 82 S.W.3d at 319. The objective component ensures that an employee only receives protection "if a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of law." *Id.*

In this case, Resendez asserts that she had a good faith belief that her supervisors were violating the law by failing to report fraud being committed by TERP applicants. In her affidavit, Resendez states that "[a]t the time I made all of these reports . . . I believed that it was illegal for state employees not to report, and to not prevent, fraud being undertaken on the state government . . . ." The Commission did not challenge Resendez's affidavit, and there is no evidence in the record that contradicts Resendez's assertion. Therefore, we conclude that Resendez has satisfied the subjective component of good faith, because she did in fact believe that Dayton and Walton were violating the law by failing to report fraud being committed against the state.

Next we consider whether Resendez's belief was objectively reasonable given her training and experience. *See id.* Resendez was instructed in her write-up that if she had any evidence that fraud was being committed in the TERP program, she should report it to management. This disciplinary admonishment could make an employee more likely to believe that public employees generally have an obligation to report fraud being committed against the state. *See Office of the Attorney General v. Rodriguez*, No. 08-11-00235-CV, 2012 Tex. App. LEXIS 7013, at *9–10

11

(Tex. App.—El Paso Aug. 22, 2012, no pet.) (noting that agency policy "mandates that any person who received a report of fraud has a duty to refer the matter to" investigators).

Furthermore, Resendez's affidavit states that Dayton and Walton had the authority to "put a stop to the illegal activity by investigating and reporting the fraud." This assertion is corroborated by the TERP audit report, in which the Commission states that the team leader of the grant development team, i.e., Dayton, is responsible for implementing procedures to confirm that applicants are qualified to receive TERP funds. This indicates that Dayton had some authority over the administration and monitoring of the TERP program, which could lead a reasonable employee to believe that he had a legal duty to prevent fraud within the program.

Similarly, Resendez's affidavit states that Walton is the Commission's implementation grants section manager and that he is on the TERP advisory board. The record indicates that Walton exercised authority over the TERP program given that he told Resendez to drop her complaints about fraud and then disciplined her for being "argumentative" with her supervisors. These facts could make an employee more likely to believe that Dayton and Walton had a legal obligation to report fraud occurring within the TERP program, given that they had seemingly broad authority over its administration. *See* Tex. Gov't Code Ann. § 321.022(a) (West 2005) (requiring certain administrative heads to report fraud to state auditor); *University of Tex. Sw. Med. Ctr. v. Gentilello*, 317 S.W.3d 865, 871 (Tex. App.—Houston [1st Dist.] 2010, pet. filed) (concluding alleged whistleblower produced sufficient evidence that he had good-faith belief supervisor was appropriate law-enforcement authority given that supervisor was required under "Medicare/Medicaid rules and regulations" to investigate and prevent violations of federal law).

12

In its brief, the Commission argues that Resendez could not have reasonably believed Dayton and Walton were violating the law by not reporting fraud because there is no statute that requires them to make such a report. In her response to the plea to the jurisdiction, Resendez cites to section 321.022(a) of the government code, which states:

> If the administrative head of a department or entity that is subject to audit by the state auditor has reasonable cause to believe that money received from the state by the department or entity . . . may have been lost, misappropriated, or misused, or that other fraudulent or unlawful conduct has occurred in relation to the operation of the department or entity, the administrative head shall report the reason and basis for the belief to the state auditor. The state auditor may investigate the report or may monitor any investigation conducted by the department or entity.

Tex. Gov't Code Ann. § 321.022(a). If an administrative head refuses to make such a report, he has committed a Class A misdemeanor. *See id.* §§ 321.019(a)(3)–(b), .022(a) (West 2005). The Commission asserts that "[a]s a long-time state employee, Ms. Resendez would certainly know the difference between the administrative head of the entire [Commission], who is subject to section 321.022(b) [sic], and her supervisors, who are not." Thus, the Commission contends that a reasonable employee in Resendez's position would know that section 321.022 did not impose a legal duty on Dayton and Walton to report potential fraud.

There is no requirement that an employee identify a specific law when making her report. *McElyea*, 239 S.W.3d at 850. Nor does the employee need to prove that the complained-of conduct is in fact a violation of law. *Id.* However, there must be some actual law which prohibits the complained-of conduct. *Id.* Violations of internal agency policy not promulgated pursuant to a statute or ordinance are not considered violations of the law under the whistleblower act. *See*

13

*Harris Cnty. Precinct Four Constable Dep't v. Grabowski*, 922 S.W.2d 954, 956 (Tex. 1996); *Vela v. City of Houston*, 186 S.W.3d 49, 53 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Thus, an employee must report what she in good faith believes to be conduct that violates some actual law, rule, or regulation. "In other words, when an employee believes and reports in good faith that a violation has occurred, but is wrong about the legal effect of the facts, he is nevertheless protected by the whistleblower statute." *McElyea*, 239 S.W.3d at 850 (internal citations omitted).

In this case, the record does not indicate exactly what authority Dayton and Walton possess or where their positions fall within the hierarchy of the Commission. Furthermore, the terms "administrative head" and "entity" are not defined in chapter 321 of the government code, and there is nothing in the record to suggest that those terms have some specific definition within the Commission. Thus, it is not clear if Dayton and Walton are in fact administrative heads of an entity that is subject to audit by the state auditor. *See* Tex. Gov't Code Ann. § 321.022. However, Resendez is not required to prove that what she reported was in fact a violation of law or that Dayton and Walton are in fact administrative heads of a qualifying entity. Rather, Resendez must show that a law exists that prohibited the complained-of conduct and that she had a good faith belief that the law was violated.

The TERP program was subject to audit by the state auditor. As previously discussed, the evidence indicates that Dayton and Walton exercised authority over the administration of TERP. In addition, Resendez's admonishment to report illegal activities to management could make an employee more likely to believe that management, i.e., Dayton and Walton, had some authority to monitor, prevent, and report fraud. *See Rodriguez*, 2012 Tex. App. LEXIS 7013, at *9–10. This evidence could support a finding that Resendez reasonably believed that Dayton and Walton

14

were administrative heads who had a legal duty to report fraud under section 321.022 of the government code.

Furthermore, the undisputed evidence establishes that Resendez told Dayton and Walton about potential fraud being committed against the state. In response, Dayton told Resendez that he did not have the time or resources to address the issue, and Walton simply told her to "drop it." This could support a finding that Resendez reasonably believed that her supervisors had "reasonable cause" to believe fraud was being committed, that they had a duty to report potential fraud, and that they refused to do so. *See* Tex. Gov't Code Ann. §§ 321.019, .022. These facts, if true, would constitute a violation of section 321.022 of the government code. *See McElyea*, 239 S.W.3d at 850. Therefore, we conclude that there is a fact question about whether Resendez had a good-faith belief that Dayton and Walton were violating the law.

*Reporting the violation of law*

In its plea to the jurisdiction, and again on appeal, the Commission asserts that even if Resendez had a good-faith belief that Dayton and Walton were violating the law, the record does not indicate that she reported that violation to anyone. The Commission claims that Resendez only alleged that she reported that TERP applicants were committing fraud, not that her supervisors were violating the law by failing to report fraud. Thus, the Commission asserts that Resendez has failed to state a valid whistleblower claim because she did not *report* a violation of law by a public employee. *See* Tex. Gov't Code Ann. § 554.002(a).

For purposes of the whistleblower act, a "report" includes "any disclosure of information tending to directly or circumstantially prove the substances of a violation of criminal or civil law, . . . statutes, administrative rules or regulations." *Howard*, 182 S.W.3d at 399–400

15

(internal quotations omitted). There are no magic words or specific phrasing that an employee must use when making a whistleblower report. *Id.* The employee need not specify what law is being violated at the time she makes the report. *McElyea*, 239 S.W.3d at 850. Nor does the employee have to affirmatively state that the conduct is in fact a violation of the law. *See Howard*, 182 S.W.3d at 400-01 (concluding that whistleblower report may be in form of query about whether conduct is unlawful).

In this case, Resendez told Brymer about potential fraud being committed against the TERP program. She also told Brymer that she had "prior conversations with Mr. Walton and Mr. Dayton in which [she] reported to them the fraudulent activity." It is reasonable to infer from this affidavit that Resendez told Brymer (1) that her supervisors knew about the fraud *and* (2) they had not done anything about it. *See Miranda*, 133 S.W.3d at 228 (noting that courts indulge every reasonable inference in favor of non-moving party). This failure to report the alleged fraud is the very conduct which Resendez believed in good-faith was illegal. Resendez was not required to affirmatively tell Brymer that her supervisors' failure to act constituted a violation of the law. *See Howard*, 182 S.W.3d at 400-01. Nor was she required to cite to any specific statute. *See McElyea*, 239 S.W.3d at 850. Indulging every inference in Resendez's favor, we conclude that her statements to Brymer could tend to prove that Dayton and Walton unlawfully refused to report fraud being committed against the state. *See* Tex. Gov't Code Ann. § 321.022(a). Therefore, we conclude that there is a fact question about whether Resendez reported a violation of law by other public employees. *See id.* § 554.002(a).

16

**Appropriate law-enforcement authority**

The third element of a whistleblower claim requires an employee to make her report to "an appropriate law enforcement authority." *See id.* § 554.002(a)–(b). The statute defines an appropriate law-enforcement authority as a "part of a state or local governmental entity . . . that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." *Id.* § 554.002(b). A governmental entity must be capable of more than internally disciplining "its own employees for an alleged violation" or "forward[ing] information to another entity to prosecute." *Needham*, 82 S.W.3d at 321. To qualify as an appropriate law-enforcement authority, the governmental entity must be capable of regulating, enforcing, investigating, or prosecuting alleged violations.

An employee must make a report to a person who she in good faith believes is an appropriate law-enforcement authority. *See* Tex. Gov't Code Ann. § 554.002(b). As previously discussed, in the context of a whistleblower claim, "good faith" has both a subjective and objective component. *See Needham*, 82 S.W.3d at 320–21 (concluding that test for good-faith applicable to employee's belief that making report to appropriate law-enforcement authority is same as belief that reporting violation of law). Thus, in order to defeat the Commission's plea to the jurisdiction, Resendez must raise a fact question about whether (1) she subjectively believed that the individual she reported to had authority to regulate, enforce, investigate, or prosecute the alleged violation and (2) that her belief was objectively reasonable. *Id.*

The supreme court has explained that the particular law that a whistleblower believes was violated is critical to the determination of whether the whistleblower had a good-faith belief that she was reporting the violation to an appropriate law-enforcement authority. *Id.* As previously

17

discussed, the "particular law" that is the basis of Resendez's whistleblower claim is section 321.022(a) of the government code.  The relevant unlawful conduct that Resendez reported was that Dayton and Walton knew about fraud being committed against the state but failed to report it.  Therefore, the remaining issue is whether Resendez had a good-faith belief that she was reporting Dayton's and Walton's allegedly unlawful conduct to an appropriate law-enforcement authority.  Resendez reported Dayton's and Walton's failure to act to both Brymer and Senator Hinojosa's office.  We will first consider whether Resendez had a good-faith belief that Brymer was an appropriate law-enforcement authority.

As an initial matter, we consider whether, as a matter of law, Resendez could not have had a good-faith belief that Brymer was an appropriate law-enforcement authority.  In *Texas Department of Transportation v. Needham*, and again in *State v. Lueck*, the supreme court held that a supervisor's authority to internally investigate and discipline its employees, standing alone, is not sufficient to show that the supervisor is an appropriate law-enforcement authority.  *See Lueck*, 290 S.W.3d at 885; *Needham*, 82 S.W.3d at 320.  The Commission asserts that these cases conclusively establish that Resendez could not in good faith believe that Brymer was an appropriate law-enforcement authority because Brymer worked within the Commission and he only had authority to internally monitor and discipline his employees.

However, several of our sister courts have held that *Needham* and *Lueck* do not stand for the broad proposition that, as a matter of law, "an employer's ability to require an employee to comply with state law" cannot give rise to a good-faith belief that the employer is an appropriate law-enforcement authority.  *Moreno v. Texas A&M Univ.-Kingsville*, 339 S.W.3d 902, 912 (Tex. App.—Corpus Christi 2011, pet. filed); *see also Rodriguez*, 2012 Tex. App. LEXIS 7013

18

at *11–12; *Gentilello*, 317 S.W.3d at 869–70; *Texas Dep't of Human Servs. v. Okoli*, 317 S.W.3d 800, 810–11 (Tex. App.—Houston [1st Dist.] 2010, pet. filed). As one court explained, "[t]he fact that an employee makes a report of a violation of law to his employer or superior regarding the work being performed by the governmental entity that employs him does not automatically render the Whistleblower Act inapplicable." *Okoli*, 317 S.W.3d at 810–11. The question remains whether, under the facts of a particular case, an employee had a good-faith belief that making an internal report of a violation of law was a report to an appropriate law-enforcement authority. *See, e.g.*, *Moreno*, 339 S.W.3d at 912–13 (concluding evidence that supervisor had authority to enforce compliance and employees were instructed to report noncompliance to supervisor could lead employee to believe that supervisor was appropriate law-enforcement authority); *Gentilello*, 317 S.W.3d at 870 (noting that supervisor had duty to enforce rules and regulations at hospital even though he "may not have had power to write the rules or assess fines"). We agree with our sister courts that an employee may, under certain facts, state a valid whistleblower claim even though she reported the violation of law to her employer or supervisor. We proceed to determine if Resendez has created a fact question about whether she believed in good faith that Brymer was an appropriate law-enforcement authority.

In her affidavit, Resendez states that she "believed that my supervisors and a State Senator had the authority to investigate these violations of the law." The Commission does not dispute, and there is nothing in the record to contradict, Resendez's claim that she believed Brymer was an appropriate law-enforcement authority. Therefore, we conclude that Resendez has satisfied the subjective component of good faith, because she in fact believed that she reported Dayton and Walton's unlawful conduct to an appropriate law-enforcement authority.

19

Next, we consider whether Resendez's belief that she reported to an appropriate law-enforcement authority was objectively reasonable. The evidence establishes that Brymer is the director of the Commission's Air Quality Division, and it is reasonable to infer that the TERP program is administered from within the Air Quality Division.[4] Thus, Brymer exercised some authority over the administration and distribution of TERP funds, in that he was the head of the division that oversaw their disbursement.

The facts in this case are very similar to those in *Texas Department of Human Services v. Okoli*. *See* 317 S.W.3d at 803. In *Okoli*, a whistleblower who believed one of his supervisors was fraudulently processing benefits reported the fraud first to his supervisor's superior, and then to that superior's manager. *Id.* The whistleblower claimed that he reasonably believed that his supervisors were appropriate law-enforcement authorities because "his work rules required employees to make reports of fraudulent conduct to their supervisors." *Id.* The court concluded that there was a fact question about whether the whistleblower had a good-faith belief that his supervisors were appropriate law-enforcement authorities. *See id.* at 809–10. The court noted that if a state agency requires an employee to report criminal matters up the chain of command, and if the agency "contemplates referral of criminal matters" within its internal policies, then the employee is entitled to whistleblower protection based on his reporting unlawful conduct to his superiors. *Id.*

Similarly here, the record before us suggests that an employee in Resendez's position could have reasonably believed that Brymer was an appropriate law-enforcement authority to whom

---

[4] Neither party expressly states nor denies that TERP was administered through the Air Quality Division. However, Brymer approved of Resendez's termination, indicating that he exercised authority over the employment of TERP usage monitors. Furthermore, the TERP audit report repeatedly emphasizes that the purpose of TERP is to improve air quality, which would logically indicate that it would be a part of the Air Quality Division.

she could report Dayton's and Walton's alleged conduct. After Resendez told Walton that she intended to inform "Legislators, the INS, and the EPA" about issues with the TERP program, Walton admonished her that if she had any "reasonable basis to believe that a law has been violated, [she] need[ed] to report it to management." Obeying that instruction, Resendez reported her supervisors' failure to address fraud to the next manager in the chain of command, i.e., Brymer. Thus, we conclude that there is a fact question about whether Resendez reasonably believed that Brymer was an appropriate law-enforcement authority.[5] *See id.*; *see also Moreno*, 339 S.W.3d at 912–14 (noting that employees were instructed to report illegal conduct to supervisors and thus fact question existed about whether reasonable employee could believe supervisors were appropriate law-enforcement authority); *Gentilello*, 317 S.W.3d at 870 ("While [supervisor] may not have had power to write the rules or assess fines . . . he had both the power and duty to enforce those rules and regulations at [the particular governmental entity].").

The Commission asserts that if Resendez wanted to report her supervisors' failure to prevent fraud, she should have reported it to the state auditor, rather then to Brymer. The Commission cites to this Court's decision in *Reninger v. Texas Building & Procurement Commission*, 259 S.W.3d 364, 368 (Tex. App.—Austin 2008, pet. denied), as precedent that a long-term public employee should know that the state auditor is the appropriate agency to report misapplication of state funds. However, *Reninger* is distinguishable from this case in three significant respects.

---

[5] Because we conclude that there is a fact question about whether Brymer was an appropriate law-enforcement authority, we need not determine whether Senator Hinojosa was an appropriate law-enforcement authority.

First, the employing agency in *Reninger* directed the whistleblower to section 404.094 of the government code, which specifically states that the state auditor "has the authority to determine" whether the conduct alleged is unlawful. *See id.* (citing Tex. Gov't Code Ann. § 404.094 (West 2005)). In this case, there is no indication that the Commission instructed Resendez or any other employee to report issues of regulatory noncompliance to the state auditor. In fact, the evidence suggests just the opposite; when Resendez threatened to report allegations to outside agencies, she was admonished that any allegation of unlawful activity should be reported to management within the Commission.

Second, section 321.022(a), the relevant statute in this case, requires certain employees to report misappropriation of funds to the state auditor, but there is nothing in section 321.022 that suggests that the state auditor has the authority to prosecute an employee for noncompliance. *Contrast* Tex. Gov't Code Ann. § 321.022(a) (imposing legal duty to report certain conduct to state auditor), *with* § 404.094(a) (stating that state auditor is agency that determines noncompliance). As previously stated, section 321.019 of the government code states that an administrative head's refusal to make a section 321.022 report constitutes a criminal offense. *See id.* §§ 321.019(b) (making failure to report Class A misdemeanor), .022(a). The state auditor has no authority to prosecute criminal offenses, and the most it could do is report a violation of section 321.019 to another agency. Thus, on appeal, it is unclear whether the Commission properly determined which governmental entity Resendez should have reported the alleged unlawful conduct to in this case. *See id.* § 554.002(b).

Finally, the record in *Reninger* established that the whistleblower "had 31 years' experience *in the accounting field*, including 19 years' experience in government accounting . . . ."

22

259 S.W.3d at 368 (emphasis added). This particularized experience in governmental accounting presumably made or should have made the employee in *Reninger* more aware of which state agencies are responsible for oversight and regulation of state funds. *See id.* However, we do not read *Reninger* to stand for the broad proposition that, as a matter of law, long-term state employees should know that they should report all mismanagement of state funds to the state auditor. In this case, there is nothing to indicate that Resendez had the kind of particularized experience of the whistleblower in *Reninger*. *Cf. id.* The record does not indicate that Resendez has ever worked in governmental accounting or inter-agency reporting of the type discussed in *Reninger*. *Cf. id.* Thus, even assuming that the state auditor is in fact the governmental entity responsible for prosecuting violations of section 321.022, we cannot conclude that as a matter of law, Resendez should have known this.

## CONCLUSION

Having determined that there is a fact question about each element of Resendez's whistleblower claim, we conclude that the trial court erred in granting the Commission's plea to the jurisdiction. *See Lueck*, 290 S.W.3d at 883. We therefore reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Pemberton and Henson;
    Justice Pemberton Dissenting without Opinion

Reversed and Remanded

Filed: December 28, 2012

23