ACCEPTED
03-14-00509-CV
4051218
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/6/2015 11:11:05 AM
JEFFREY D. KYLE
CLERK

**No. 03-14-00509-CV**

_____

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT
_____

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/6/2015 11:11:05 AM
JEFFREY D. KYLE
Clerk

**THE UNIVERSITY OF TEXAS AT AUSTIN**
*Appellant,*

**VS.**

**DIJAIRA B. SMITH,**
*Appellee.*

_____

On Appeal from the 200th Judicial District Court of Travis County, Texas
Cause No. D-1-GN-13-004318

_____

**RESPONSE TO APPELLEE'S POST-SUBMISSION BRIEF**
_____

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

JAMES "BEAU" ECCLES
Division Chief

ERIKA M. LAREMONT
Texas Bar No. 24013003
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 (PHONE)
(512) 320-0667 (FAX)

ATTORNEYS FOR APPELLANT
February 6, 2015

# TABLE OF CONTENTS

TABLE OF CONTENTS.......................................................................................... ii

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ................................................................................................1

ARGUMENT .......................................................................................................2

    I.      UT's Office of Internal Audits Did Not Possess Criminal Investigation Authority. ..................................................................................................2

    II.    Smith Did Not Have a Good Faith Belief that Internal Auditors Were Appropriate Law Enforcement Authorities. ................................................7

    III.   Smith Failed To Demonstrate A Waiver Of Sovereign Immunity. .............13

CONCLUSION ...................................................................................................14

CERTIFICATE OF COMPLIANCE...................................................................15

CERTIFICATE OF SERVICE ...........................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Bland Indep. Sch. Dist. v. Blue*,
34 S.W.3d 547 (Tex. 2000) ...................................................................................13

*City of Houston v. Kallina*,
97 S.W.3d 170 (Tex.App.– Houston [14th Dist.] 2003) .................................3

*Damuth v. Trinity Valley Community College*,
No. 13-0815, 2014 WL 6612535 (Tex. Nov. 21, 2014)............................1, 2

*Dep't of Transp. v. Needham*,
82 S.W.3d 314 (Tex. 2002) ..................................................................................3

*Harris County Precinct Four Constable Dep't v. Grabowski*,
922 S.W.2d 954 (Tex. 1996) ...............................................................................3

*Resendez v. Texas Commission on Environmental Quality*,
391 S.W.3d 312 (Tex. App.—Austin 2012)......................................................8

*Ruiz v. City of San Antonio*,
966 S.W.2d 128, 130 (Tex.App.–Austin 1998, no pet.)............................3, 4

*State of Texas v. Lueck*,
290 S.W.3d at 881 (Tex. 2009) ........................................................................13

*Tex. Dep't Human Serv. v. Okoli*,
317 S.W.3d 800 (Tex. App.—Houston [1st Dist.] 2010)................................8

*Tex. Dep't Human Serv. v. Okoli*,
440 S.W.3d 611 (Tex. 2014) ................................................................. *passim*

*Tex. Health & Human Serv. Comm'n v. McMillen*,
No. 03-13-00303-CV, 2015 WL 134686 (Tex. App.—Austin Jan. 8,
2015) ...............................................................................................................3, 6

*Texas Commission on Environmental Quality v. Resendez*,
No. 13-0094, 2014 WL 6612570 (Tex. Nov. 21, 2014)............................1, 9

*University of Texas Southwestern Medical Center at Dallas v. Gentilello,*
398 S.W.3d 680 (Tex. 2013) ................................................................. *passim*

**Statutes**

TEX. GOV'T CODE §§ 554.001.................................................................2

TEX. GOV'T CODE §554.002.................................................................2

TEX. GOV'T CODE §554.002(b).............................................................3

TEX. GOV'T CODE §554.002(b)(1) ........................................................4

TEX. GOV'T CODE §554.002(b)(2) ........................................................4

TEX. GOV'T CODE ANN. § 554.0035 ...................................................13

TEX. GOV'T CODE §§ 554.010.............................................................2

**INTRODUCTION**

Appellee sought leave to submit a post-submission brief seeking to distinguish the facts of her case from the recent ruling from the Texas Supreme Court in *Texas Commission on Environmental Quality v. Resendez*, No. 13-0094, 2014 WL 6612570 (Tex. Nov. 21, 2014), as well as apply *Damuth v. Trinity Valley Community College*, No. 13-0815, 2014 WL 6612535 (Tex. Nov. 21, 2014) to demonstrate a waiver of sovereign immunity for Smith's Whistleblower claims. Smith begins her post-submission brief with yet another attempt to establish that UT's Internal Audits department possessed *actual* law enforcement capabilities to investigate alleged criminal violations. She then segues into distinguishing the facts of her case from the Texas Supreme Court's *Texas Commission on Environmental Quality v. Resendez* opinion. Finally, she urges this Court to disregard Supreme Court precedent in Whistleblower cases and simply find a waiver UT's sovereign immunity based on a plain reading of the statute.

However, the facts of this case, as well as case law, do not support Smith's arguments. The record makes clear that UT's Internal Audits was not vested with law enforcement authority and was not an appropriate law enforcement authority. The record further makes clear that Smith was aware of UT's Internal Audits' limited authority, i.e., authority to investigate and determine only UT's (internal) compliance with UT rules and regulations, which demonstrated a lack of good faith

1

belief that she reported to appropriate law enforcement authority under the Act and supports the application of the supreme court's *Resendez* opinion, along with *University of Texas Southwestern Medical Center at Dallas v. Gentilello,* 398 S.W.3d 680 (Tex. 2013) and *Tex. Dep't Human Serv. v. Okoli*, 440 S.W.3d 611 (Tex. 2014) in dismissing her claims. Finally, her reliance on *Damuth* is misplaced since she failed to demonstrate a waiver of sovereign immunity.

**ARGUMENT**

**I.     UT's Office of Internal Audits Did Not Possess Criminal Investigation Authority.**

The Texas Whistleblower Act prohibits state and local government employers from taking adverse personnel actions against employees who, in good faith, report violations of law to an appropriate law enforcement authority. TEX. GOV'T CODE §§ 554.001–554.010. To prevail on a claim under the Texas Whistleblower Act, an employee must prove that (1) she is a public employee; (2) she acted in good faith in making a report; (3) the report involved a violation of law; (4) the report was made to an appropriate law enforcement authority; and (5) she suffered retaliation for making the report. TEX. GOV'T CODE §554.002. An entity is "an appropriate law enforcement authority" under the Act if it is "part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." TEX. GOV'T CODE

2

§554.002(b). Thus, "'critical to the determination' of whether the recipient of a report is an appropriate law enforcement authority is the 'particular law the public employee reported violated.'" *Tex. Health & Human Serv. Comm'n v. McMillen*, No. 03-13-00303-CV, 2015 WL 134686, *4 (Tex. App.—Austin Jan. 8, 2015, no pet. h.)(citing *Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320 (Tex. 2002)).

In this case, Smith reported the following violations: bank fraud; sexual harassment, a UT employee's use of a Bridge City I.S.D. vehicle; solicitation to alter a government document; violations of hiring and employment practices; and violations of law concerning procurement of goods and services. She also reported alleged illegal fund transfers in violation of Texas Government Code §771.004. See Appellee Br. at pp. 2-3. First, violations of employment *practices* and violations of *procedures* regarding the procurement of goods and services do not constitute violations of civil or criminal laws since Smith testified that the employment and procurement practices that were allegedly violated were, in fact, the University of Texas at Austin's practice or regulation. CR 141, ln: 5-25 (employment practices); CR at 144, ln: 10-22 (procurement practices). Violation of internal policies not promulgated pursuant to a statute or ordinance do not constitute a "violation of law" under the Whistleblower Act. *See Harris County Precinct Four Constable Dep't v. Grabowski*, 922 S.W.2d 954, 955-56 (Tex. 1996); *City of Houston v. Kallina*, 97 S.W.3d 170, 174-75 (Tex.App.– Houston [14th Dist.] 2003, pet. denied); *Ruiz v. City*

3

*of San Antonio*, 966 S.W.2d 128, 130 (Tex.App.–Austin 1998, no pet.). There is no evidence in the record establishing that UT's employment and/or procurement practices were adopted into law and therefore, any violations of these practices cannot serve as the basis of a Whistleblower claim.

Second, Smith must establish that the individuals within UT's Internal Audits office had the authority to regulate under or enforce the laws related to: bank fraud; sexual harassment, a UT employee's use of a Bridge City I.S.D. vehicle; solicitation to alter a government document; or alleged illegal fund transfers in violation of Texas Government Code §771.004. TEX. GOV'T CODE §554.002(b)(1). In the alternative, Smith must demonstrate that the individuals within UT's Internal Audits department and/or Legal Affairs had the authority to investigate or prosecute a violation of criminal law, including bank fraud, misappropriation of state property and/or solicitation to alter a government document. TEX. GOV'T CODE §554.002(b)(2).

Smith presented the trial court with no evidence that Internal Audits and/or Legal Affairs was authorized to regulate under or enforce the laws related to: bank fraud; sexual harassment, a UT employee's use of a Bridge City I.S.D. vehicle; solicitation to alter a government document; or alleged illegal fund transfers in violation of Texas Government Code §771.004. She only continued to assert that Internal Audits had the authority to investigate alleged violations of criminal laws.

4

Smith's Post-Submission Br. at 2-3.

With regard to Internal Audits' ability to investigate criminal laws, the only evidence Smith presented to support her claim that Internal Audits was an appropriate law enforcement authority was the UT's "Suspected Dishonest or Fraudulent Activities" policy. Smith's Post-Submission Br. at 2. However, a reading of the dishonesty policy demonstrates that it, in fact, limits: (1) what types of violations of criminal laws may be reviewed; (2) who may be investigated; (3) who may conduct the investigation; and (4) the role Internal Audits may play in any investigation. CR at 324.

Indeed, contrary to Smith's numerous assertions, Internal Audits is not authorized to conduct criminal investigations. As clearly stated in UT's "Suspected Dishonest or Fraudulent Activities" policy, the only entity at UT that conducts investigations of possible criminal violations is the UT police department. *Id*. Internal Audits role is limited to "assist[ing] UTPD in investigations of suspected criminal activity that required accounting or auditing knowledge." *Id*. Further, it is important to remember the narrow scope of the "Suspected Dishonest or Fraudulent Activities" policy which excludes most of the laws Smith claims were violated. Indeed, this policy would only incorporate an investigation into the alleged bank fraud by Dr. Breithaupt and the alleged solicitation to alter a governmental document by Dr. Harrison. *Id*. However, as described by Smith, neither of these allegations

5

involve accounting or auditing knowledge and thus, Internal Audits would not be called upon to assist the UT police department in its investigation into these allegations.[1]

Moreover, the "Suspected Dishonest or Fraudulent Activities" policy does not empower Internal Audits to investigate violations of criminal law by the public at large. *See McMillen*, No. 03-13-00303-CV, 2015 WL 134686, *5 (quoting *Gentilello*, 398 S.W.3d at 686) ("The recipient of the report must have authority over third parties as to the law alleged to be violated and that authority must be 'free-standing regulatory, enforcement, or crime-fighting authority.'"). Again, under this policy, any investigation into possible dishonest or fraudulent activities committed by UT employees, students and/or those individuals who are engaged in a business relationship with UT would be conducted by UT police. CR at 323. However, the law contemplates the power to conduct a criminal investigation of the general public, not only those individuals associated with the university. *See Tex. Dep't Human Serv. v. Okoli*, 440 S.W.3d 611, 617 (Tex. 2014) (report must be made to someone

---

[1] Smith described the "bank fraud" allegation as one in which Charles Breithaupt "falsely represented to a mortgage lender that the wife of an important UIL vendor representative would be working as a contract employee of UIL to enhance the representative's application for a home loan." Appellee Br. at 2. She described the solicitation incident as "Harrison's solicitation for [Smith] to alter a government document in connection with an open records request pertaining to professional fees and services." *Id.* at 3.

6

or some department with "outward-looking law-enforcement authority"); *see also* *Gentilello*, 398 S.W.3d at 687.  This policy does not provide the "*outward-looking*" authority over third-party offenders necessary to conclude that UT's Internal Audits department was "an appropriate law enforcement authority" under the Whistleblower Act.

Indeed, following recent Texas Supreme Court precedence, an employee does **<u>not</u>** make a report to "an appropriate law enforcement entity when the report is made: (1) to an entity responsible for ensuring internal compliance with the law allegedly violated; (2) to an entity who lacks authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself; or (3) with the knowledge "that the report will have to be forwarded elsewhere for regulation, enforcement, investigation, or prosecution, then the employee is not reporting '*to* an appropriate law[-]enforcement authority.'"  *Tex. Dep't Human Serv. v. Okoli*, 440 S.W.3d 611, 615 (Tex. 2014) (emphasis in the original); *Gentilello*, 398 S.W.3d at 685-86.

## II.   Smith Did Not Have a Good Faith Belief that Internal Auditors Were Appropriate Law Enforcement Authorities.

Smith makes much of the fact that UT auditors told her they were the "appropriate people to report illegal transactions or any other wrongdoing" and that she "was protected against retaliation."  CR at 152: 23 – 153: 10.  In her Appellee brief, Smith relied on this Court's opinion in *Resendez v. Texas Commission on*

7

*Environmental Quality*, 391 S.W.3d 312, 322 (Tex. App.—Austin 2012, pet. granted), to support her argument that following an agency's reporting policy created a fact question whether the employee had an objectively reasonable belief that she reported to an appropriate law enforcement authority when the employee was specifically told to "report to management." Appellee Br. at 18-19.

The *Resendez* court of appeals determined that it was objectively reasonable for Resendez to believe that David Brymer, the director to TCEQ's Air Quality Division, exercised some administrative control over the Texas Emissions Reduction Plan ("TERP") that she believed her supervisors violated. *Resendez*, 391 S.W.3d at 327. Relying on the court of appeals' opinion in *Tex. Dep't Human Serv. v. Okoli*, 317 S.W.3d 800, 803, 809-10 (Tex. App.—Houston [1st Dist.] 2010, pet. Granted), the *Resendez* appellate court concluded that when an employee is told to report to management and follows these instructions, a fact question is created regarding whether an employee reasonably believed that her supervisor was an appropriate law enforcement authority. *Resendez,* 391 S.W.3d at 325.

During the pendency of the *Resendez* appeal, the Texas Supreme Court issued opinions in *University of Texas Southwestern Medical Center at Dallas v. Gentilello*, 398 S.W.3d 680 (Tex. 2013) and *Tex. Dep't Human Serv. v. Okoli*, 440 S.W.3d 611 (Tex. 2014). The *Gentilello* opinion requires an employee to present evidence to support a reasonably objective belief that the reported-to entity possessed the power

8

"to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself" or "to promulgate regulations governing the conduct of such third parties." *Gentilello*, 398 S.W.3d at 686. *Okoli* provides that if the reported-to entity will have to forward any reports to another office for regulation, enforcement, investigation or prosecution, then the reported-to entity is not an appropriate law enforcement authority under the Whistleblower Act.

Following its reasoning in the above cases, the Texas Supreme Court reversed the court of appeals in *Resendez*, concluding that *Resendez* did not make a report to an appropriate law enforcement authority because the people to whom she reported lacked authority to enforce any laws alleged to be violated. *Tex. Comm'n on Envtl. Quality v. Resendez*, No. 130094, 2014 WL 6612570, *3 (Tex. Nov. 21, 2014). Smith noted that the *Resendez* Supreme Court opinion did not mention that Resendez was told to "report to management" and that this omission is a significant difference between that opinion and her case. However, as the supreme court emphasized in its *Okoli* opinion, if an employee makes a report pursuant to a written policy, or even as in the *Resendez* case, pursuant to the directive of a supervisor, to a manager, supervisor or director who lacks law enforcement authority, and "with the knowledge that the report will have to be forwarded elsewhere for regulation, enforcement, investigation, or prosecution, then the employee is not reporting '*to* an appropriate law[-]enforcement authority.'" *Okoli*, 440 S.W.3d at 615.

Indeed, therein lies another significant difference between *Resendez* and the present case: this case includes a record replete with testimony from the employee (here Smith) admitting that the scope of authority of the reported-to person (here UT auditors) was such that they could not be an "appropriate law enforcement authority" under the Act. Though she persists in urging this Court to find a fact question regarding whether she held a good faith belief that she was reporting to an appropriate law enforcement authority, the totality of Smith's deposition testimony contradicts any demonstration of an objectively reasonable belief that the people in Internal Audits had the authority to investigate alleged violations of criminal law. Smith cannot reasonably expect this Court to ignore her deposition testimony, which clearly established a lack of subjective and objective belief that she reported to appropriate law enforcement authorities under the Act.

Smith knew that the function of Internal Audits was limited to internal compliance issues. She testified to the following:

Q:    What was [the Office of Internal Audits'] function at U.T. – Austin?

A:    It's to ensure that U.T. departments were complying with The University of Texas at Austin, U.T. System, and the law, any other law applicable, to ensure that they were om compliance with those laws – and to take actions if the law – law regulations were not in compliance.

Q:    What type of action do you believe the Office of Internal Audits could take?

A:    I believe that they could terminate employment. It's one of them. I believe that if the violation was applicable, they would – move forward

10

to other enforcement agencies, and I believe that they had the authority to enforce.

CR at 150: 10 – 151: 4; *see Gentilello*, 398 S.W.3d at 685 (ensuring internal compliance is insufficient to make entity "appropriate law enforcement authority"). Thus, assurances that Internal Audits was the appropriate department to communicate reports of wrongdoing would permit Internal Audits to conduct an internal investigation into any compliance issues and is consistent with what Smith knew was the function of Internal Audits. *See Okoli*, 440 S.W.3d at 614 (internal report up a chain of command do not satisfy Whistleblower Act).

Smith also testified that Internal Audits could only ensure that **UT employees** were complying with rules, regulations and law. CR at 152: 3-6, 9-11. She did not believe that Internal Audits could ensure that people outside the university were complying with rules, regulations or law. *Id.* (bank fraud); *see also* CR at 173:13-23 (fund transfers); CR at 185: 25 – 186:20 (use of Bridge City I.S.D. vehicle)[2]; CR at 199: 13-17 (alteration of government document). She did not know or believe that Internal Auditors could investigate an allegation of wrongdoing committed by someone outside of the university. CR at 162: 2-4, 10-17 (bank fraud); 188:22 –

---

[2] Smith also testified that she did not know if Legal Affairs could enforce, regulate or investigate the use of the Bridge City I.S.D. vehicle if it involved a non-UT employee. CR at 197: 2-22. She further believed that Legal Affairs could only ask for the return of the vehicle and terminate the employee. CR at 197: 23 – 198: 3

189: 5, 7-10 (use of Bridge City I.S.D. vehicle); CR at 199: 13-20 (alteration of government document). Regardless of what she may have been told by Internal Auditors, Smith was clearly aware that Internal Audits could only ensure compliance of UT employees with regard to her complaints of violations of law.

Further, when asked what actions Internal Audits could take, Smith could only testify that it could terminate employment and forward information to others for prosecution. CR at 163: 4-10; 190: 2-12 (bank fraud); CR at 190: 2-12 (use of Bridge City I.S.D. vehicle); CR at 202:17 – 203: 4 (alteration of government document). Thus, the notion that Internal Auditors told her it was appropriate to report wrongdoing to that office means little to her Whistleblower claim when she fully understood the limitations of what that office could do with such a report.

In this case, regardless of what she was supposedly told by individuals working in the Internal Audits office, Smith failed to demonstrate a good faith belief that by reporting to individuals within the Internal Audit department, she reasonably believed she was reporting to individuals with authority to enforce or regulate under the laws she alleged were violated or investigate the violations of criminal laws she reported. She knew full well the limitations of the department to which she made her reports included internal compliance, internal discipline and forwarding reports to proper prosecutorial authorities. Thus, whatever she was told by auditors does

not support a good faith belief, in light of what she actually knew to be the scope of authority for Internal Audits.

## III. Smith Failed To Demonstrate A Waiver Of Sovereign Immunity.

It is undisputed that the Texas Whistleblower Act also contains a waiver of sovereign immunity. *See* TEX. GOV'T CODE ANN. § 554.0035. However, a plaintiff bears the burden of demonstrating this waiver by properly alleging a violation of the act. *State of Texas v. Lueck*, 290 S.W.3d at 881(Tex. 2009). Whether the plaintiff has properly alleged a violation of the act is a jurisdictional question. *Id*. When the facts underlying the merits and subject-matter jurisdiction are intertwined, "the State may assert immunity from suit by a plea to the jurisdiction, even when the trial court must consider evidence 'necessary to resolve the jurisdictional issues raised.'" *Id*. at 880 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)).

Thus, to demonstrate a waiver of sovereign immunity in this case, Smith was required to allege a violation under the Whistleblower Act, which required an analysis of jurisdictional facts "in order to ascertain what constitutes a violation, and whether that violation has actually been alleged." *Id*. Because Smith failed to make a report to an appropriate law enforcement authority, she failed to allege an actual violation of the Whistleblower Act and failed to establish a waiver of immunity. Thus, the trial court erred by denying UT's plea to the jurisdiction and this Court must be reversed.

13

## CONCLUSION

For all the reasons stated above and in Appellant's briefs, Smith's reports to UT's Office of Internal Audits do not satisfy the jurisdictional requirement that such reports be made to an appropriate law enforcement authority. Accordingly, the Court should reverse the trial court's denial of UT's plea to the jurisdiction, grant the UT's plea, and render judgment dismissing the case.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

JAMES "BEAU" ECCLES
Division Chief

/s/   *Erika M. Laremont*
ERIKA M. LAREMONT
Attorney in Charge
Texas Bar No. 24013003
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX  78711-2548
PHONE: (512) 475-4196;
FAX:  (512) 320-0667
Erika.Laremont@texasattorneygeneral.gov
ATTORNEYS FOR APPELLANT

14

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i)(2)(B) and 9.4(i)(3), I certify that this reply brief complies with the type-volume limitations and work-count limitations.

Exclusive of the exempted portions in T.R.A.P. 9.4, the Brief contains: 3,220 words.

The Brief has been prepared in Word 10, Times New Roman, 14-point font.

/s/   *Erika M. Laremont*
ERIKA M. LAREMONT
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I certify that a copy of the above *Response to Appellee's Post-Submission Brief* was served by certified mail, return receipt requested, on **February 6, 2015** upon the following individuals at the listed address:

John Judge
Judge, Kostura & Putman, P.C.
The Commissioners House at Heritage Square
2901 Bee Cave Road, Box L
Austin, Texas 78746
512-328-9099
512-328-4132  FAX

/s/  *Erika M. Laremont*
ERIKA M. LAREMONT
Assistant Attorney General